808 So.2d 597 (2001)
INVESTMENT MANAGEMENT SERVICES, INC.
v.
VILLAGE OF FOLSOM and Hibernia National Bank.
No. 2000 CA 0832.
Court of Appeal of Louisiana, First Circuit.
May 11, 2001.
*600 William M. Magee, Covington, for Plaintiff-Appellant Investment Management Services, Inc.
Paul A. Holmes, Baton Rouge, for Defendant-Appellee Village of Folsom.
Delbert G. Talley, Covington, for Intervenors-Appellees Village Trace Property Owners.
Before: FOIL, FOGG and CLAIBORNE,[1] JJ.
CLAIBORNE, J.
This is a suit by plaintiff-appellant, Investment Management Services, Inc., against the Village of Folsom, defendant-appellee, and Hibernia National Bank,[2] seeking a declaratory judgment rendering Map 850-A the official plat controlling the Village Trace Subdivision in Folsom, Louisiana. Village Trace Subdivision property owners intervened in the lawsuit, seeking a declaratory judgment rendering Map 697-B the official plat controlling the subdivision. Plaintiff appealed the trial court's judgment dismissing its claims and declaring that Map 697-B was the controlling plat for Village Trace Subdivision. For the following reasons, we affirm.

FACTS AND PROCEDURAL BACKGROUND
The basic facts are these. In September, 1980, owners of a tract of land in Folsom, Louisiana, prepared a map (Map 697-B) and restrictive covenants for a thirty lot subdivision, Village Trace Subdivision (VTS). VTS landowners submitted Map 697-B to Village of Folsom officials (mayor and aldermen) at a town meeting, and the map was signed. At the time, there was no formal Municipal Planning or Zoning Commission for the Village of Folsom. On June 1, 1981, the restrictive covenants for VTS were recorded in the St. Tammany Parish public records, and on June 23, 1981, Map 697-B was recorded in the St. Tammany Parish public records. VTS landowners began to sell lots and develop the subdivision. In December, 1982, another map was prepared (Map 850-A) purporting to resubdivide VTS into thirty-seven lots. VTS restrictive covenants were amended to require written consent of a majority of the property holders before any lots in VTS could be resubdivided. The amended restrictive covenants were recorded in the St. Tammany Parish public records on December 2, 1983. However, approximately six months earlier (May, 1983), Village of Folsom officials individually (not at a town meeting) signed Map 850-A. Map 850-A was recorded in the St. Tammany Parish public records three years after it was prepared, on January 2, 1985.
Sometime[3] after both maps were signed by Village of Folsom officials, but before *601 Map 850-A was recorded into the public records, the Village of Folsom enacted ordinances creating a Municipal Planning and Zoning Commission in accordance with La. R.S. 33:101, et seq.[4] In addition, on August 6, 1984, a Comprehensive Subdivision Ordinance (# 84-4, referred to as the Folsom Subdivision Ordinance of 1983, and herein referred to as the "ordinance") became effective. This ordinance (1) required subdivision plats to be submitted for written approval by the planning commission before recordation [Sec. 1.1, Sec. 1.302(35), and Art. 5], (2) required lots in subdivisions in Folsom to be at least 20,000 square feet in area [Sec. 2.202], and (3) prohibited lots from being resubdivided [Sec. 4.3]. However, "lots of record" were exempt from the requirements and prohibitions of the ordinance. Map 697-B was the only map recorded at the time of the effective date of the ordinance. Not only was Map 850-A not recorded at the time, but some of the lots on Map 850-A did not meet the 20,000 square foot area requirement of the ordinance. Meanwhile, lots continued to be sold in VTS, some pursuant to Map 697-B and some pursuant to Map 850-A. Then, in May 1987, the Village of Folsom Municipal Planning and Zoning Commission passed a resolution declaring Map 850-A to be invalid, and the resolution was recorded in the St. Tammany Parish public records on May 21, 1987.
Approximately eight years later, plaintiff, Investment Management Services, Inc. (IMS), purchased the remaining unsold lots in VTS on August 30, 1995, from Hibernia National Bank (Hibernia).[5] The number of lots differed, depending upon which subdivision map was referenced. The act of sale did not reference either map, nor were there any dimensions given for the lots sold. According to Map 697-B, IMS owned 13 lots; according to Map 850-A, IMS owned 18 lots. At the time of purchase, IMS was aware of the two conflicting subdivision maps, the Town of Folsom resolution declaring Map 850-A invalid, the ordinance restricting the size of subdivision lots, and the restrictive covenants for resubdivision of VTS. In March 1996, IMS sold two lots (lots 28 and 4) pursuant to Map 697-B.[6] This suit arose when IMS attempted to sell Lot 14-A in August 1996, pursuant to Map 850-A, and the Village of Folsom refused to issue a building permit to the prospective buyer for construction on the lot because it did not recognize Map 850-A. At the time, it was the policy of the Village of Folsom to decline applications for building permits for construction in VTS on any lots sold pursuant to Map 850-A. Consequently, since Lot 14-A was only on Map 850-A, no building permit was issued, and the sale of Lot 14-A was not consummated.
IMS filed suit on February 5, 1997, to have Map 850-A declared the official controlling plat for VTS, and to cancel the Town of Folsom resolution declaring Map 850-A invalid. Additionally, IMS claimed to have suffered damages from lost sales on lots listed on Map 850-A, and it amended its petition to request attorney's fees *602 and damages pursuant to 42 USCA 1983. VTS property owners intervened on July 7, 1997, asking that Map 697-B be declared the official plat for VTS. The trial court denied all of IMS's claims and declared Map 697-B to be the official plat controlling VTS. IMS now appeals, raising eleven assignments of error.

DISCUSSION
IMS's assignments of error may be grouped together for purposes of discussion in the following manner: (1) the trial court incorrectly found that Map 850-A was of no legal effect; (2) the trial court incorrectly found that the intervenors' rights had not prescribed under La. Civ. Code art. 781; and (3) the trial court failed to award damages and attorney's fees to IMS.

Validity of Resubdivision Map 850-A

(Assignments of Error One through Six)
The trial court specifically found that neither Map 697-B nor Map 850-A was properly approved by the Village of Folsom, according to La. R.S. 33:406 governing the enactment of ordinances and resolutions by municipalities. However, both maps[7] were prepared and purportedly approved by the Folsom Town Council prior to the existence of the Village of Folsom Municipal Planning or Zoning Commission. For that reason, the trial court found that the approval process of the maps was of no consequence. We agree, and note that absent allegations or proof to the contrary, we presume Map 697-B and Map 850-A were both properly signed and approved by the Folsom Town Council.[8] There is a prima facie presumption of validity which attaches to acts of governing authorities. Christopher Estates, Inc. v. East Baton Rouge Parish, 413 So.2d 1336, 1338 (La.App. 1st Cir. 1982).
The first zoning and subdivision regulations (the ordinance) for the Village of Folsom went into effect on August 6, 1984. Thus, August 6, 1984, was the operative date in the trial court's reasoning. The ordinance required subdivision lots in the Village of Folsom to be at least 20,000 square feet in area except lots recorded prior to adoption of the ordinance.[9] The only subdivision map recorded in the public records for St. Tammany Parish on the effective date of the ordinance was Map 697-B, recorded on June 23, 1981. Map 850-A was prepared by the subdivision developers prior to the effective date of the ordinance; however, Map 850-A was not recorded in the public records until January 2, 1985, almost five months after the effective date of the ordinance. Therefore, the trial court found Map 697-B was the controlling map for the subdivision because it was the only recorded subdivision plat for VTS in existence on August 6, 1984.
A review of the ordinance reveals specific language providing that any sale of subdivided lots required the submission of a plat to the Planning Commission of the Village of Folsom except in the case of land in subdivisions previously legally recorded.[10] *603 The date of recordation in the public records is the important date in determining which map is controlling in this situation. Map 697-B was the only plat concerning VTS legally recorded on the date of the enactment of the ordinance. Map 850-A was not legally binding and had no effect because it had not been submitted to the Planning Commission of the Village of Folsom prior to its recordation on January 2, 1985, as required by the ordinance and La. R.S. 33:111.[11] It is irrelevant that Map 850-A existed prior to the enactment of the ordinance, and that town officials signed their names to Map 850-A a year prior to the ordinance becoming effective. The Village of Folsom Planning Commission existed before Map 850-A was recorded in 1985. Accordingly, Map 850-A should have been submitted to the planning commission for written approval as required by law. The ordinance very clearly excepts subdivision lot sales from planning commission plat approval only if previously legally recorded. The signing of a proposed resubdivision map by officials is not the same as legally recording the map in the public records. The date of recordation is the determinative date, not the date of approval. Therefore, we find that Map 697-B was the only legally recorded plat on the effective date of the ordinance, and as such, it is the official plat for VTS.
The resolution passed and recorded by the Village of Folsom on May 21, 1987, served to put the public on notice that the Village of Folsom did not recognize Map 850-A, and would not issue building permits for construction of homes sold pursuant to Map 850-A. IMS makes much of the difference between an ordinance and a resolution. However, the resolution in question is not in conflict with the subdivision ordinance. Furthermore, an ordinance, by its very nature and definition, is superior to a resolution and must prevail. See Paciera v. Parish of Jefferson, 96-441 (La.App. 5th Cir.11/26/96), 685 So.2d 333, writ denied, 96-3077 (La.2/7/97), 688 So.2d 506. A resolution is only a formal expression of the opinion or will of an official body and generally relates to the administrative business of municipalities. James v. Rapides Parish Police Jury, 236 La. 493, 108 So.2d 100, 102 (1959). The instant resolution does not attempt to legislate the subdivision regulations for the Village of Folsom. The subdivision regulations in the ordinance prescribe the permanent rule of law which will continue in force until the ordinance is repealed. The subdivision ordinances were amended on May 11, 1992; however, they have not been repealed. We find that the ordinance and resolution in this case are not conflicting; the resolution simply attempts to state the will of the Village of Folsom to declare the resubdivision Map 850-A invalid because it was not approved in accordance with the ordinance (law) of the Village of Folsom. Therefore, we conclude the trial court did not err in refusing to direct the cancellation of the Town of Folsom resolution.
IMS contends that the trial court erroneously refused to consider an equitable remedy in the form of a third map which was introduced into evidence as a consolidated version of the two conflicting maps. However, IMS did not submit proof that the "equity map" was either approved or disapproved by the Village of Folsom Planning Commission. See La. R.S. 33:111 and La. R.S. 33:112. IMS did not make allegations in its petition for judicial *604 review of any action taken by the planning commission regarding the "equity map." Additionally, there was no showing that the resubdivision of VTS represented by the "equity map" was ever consented to in writing by a majority of VTS property holders as required by the amended restrictive covenants for VTS. It is not the function of the trial court to approve or disapprove a subdivision plat; that is a legislative function involving the exercise of legislative discretion by the governing authority of a parish or municipality. Judicial review takes place after the act of the planning commission or governing authority regarding the subdivision plat. See La. R.S. 33:101.1 and La. R.S. 33:113. The act of the planning commission regarding the resubdivision in the "equity map" was not before the trial court, and therefore, cannot be reviewed by this court. Neither the trial court nor a reviewing court may substitute its wisdom (in the form of an "equity map") for that of the governing body (zoning board or planning commission) except when there is an abuse of discretion or an excessive use of power. Christopher Estates, Inc. v. East Baton Rouge Parish, 413 So.2d at 1340. Therefore, we find that because the action of the Village of Folsom Planning Commission regarding the "equity map" was not before the trial court, and there was no showing that the "equity map" had the written consent of a majority of VTS property holders, it is not a viable remedy in this case. The trial court did not err in rejecting the proposed "equity map."

Prescription and the Intervenors' Rights

(Assignments of Error Seven through Ten)
VTS property holders intervened in this lawsuit on July 7, 1997, to prevent IMS from violating VTS's amended restrictive covenants requiring written consent of a majority of the property holders before resubdividing VTS, and to ask the trial court to declare Map 697-B the official plat for VTS. IMS argued that the property owners' right to intervene had prescribed under La. Civ.Code art. 781 because of the lapse of two years from the date of recordation of Map 850-A on January 2, 1985. The trial court ruled that the intervenors' right to intervene and enforce the amended restrictive covenants prohibiting resubdivision of VTS had not prescribed. IMS now argues on appeal that the trial court erred in its ruling, and erroneously relied on a Supreme Court case, Brier Lake, Inc. v. Jones, 97-2413 (La.4/14/98), 710 So.2d 1054.
La. Civ.Code art. 781 provides, "No action for injunction or for damages on account of the violation of a building restriction may be brought after two years from the commencement of a noticeable violation. After the lapse of this period, the immovable on which the violation occurred is freed of the restriction that has been violated." Some of the lots in VTS were sold and houses were built pursuant to the dimensions on Map 850-A. Each time a lot in VTS was sold pursuant to Map 850-A and built on, a potential noticeable violation of the amended restrictive covenants for VTS occurred. We do not agree with IMS that the noticeable violation was the recordation of Map 850-A in the public records on January 2, 1985. Article 781 contemplates a violation on the immovable (lot) itself, such as clearing or staking out of land or the actual building of a house on the lot. Some activity which is noticeable and apparent must occur on the lot, and at that point the two-year prescriptive period commences. See Mouton v. Curtis, 456 So.2d 694 (La.App. 5th Cir.1984) and duTreil v. Curtis, 410 So.2d 334 (La.App. 4th Cir.1982). Recordation of the invalid resubdivision Map 850-A was *605 not a noticeable violation which would trigger the running of the two-year prescriptive period.[12]
When IMS purchased the remaining vacant lots in VTS on August 30, 1995, and sold Lots 28 and 4 in March 1996, it did those acts pursuant to Map 697-B, subject to all pertinent restrictive covenants for VTS and local ordinances. When IMS tried to sell Lot 14-A pursuant to Map 850-A in August 1996, it was attempting to violate VTS's amended restrictive covenants prohibiting resubdivision of VTS without the written consent of a majority of the property holders. When IMS filed suit on February 5, 1997, seeking to have Map 850-A declared the official plat for VTS, it was attempting to violate VTS's amended restrictive covenants prohibiting resubdivision of VTS without the written consent of a majority of the property holders. VTS property holders intervened in the lawsuit to prevent the violation of the amended restrictive covenants. IMS has not violated the amended restrictive covenants yet because it has not sold or attempted to build on any lots pursuant to the invalid Map 850-A. Accordingly, VTS property owners' rights to intervene have not prescribed under La. Civ.Code art. 781.[13] Furthermore, the prescriptive period in Article 781[14] applies to each noticeable violation. See Webb v. Johnson, 95-1518, p. 4 (La.App. 3rd Cir.4/3/96), 671 So.2d 1120, 1122-1123 and Harris v. Landry, 345 So.2d 242, 245 (La.App. 3rd Cir.), writ denied, 347 So.2d 262 (La.1977). Consequently, the few lots previously sold and built on pursuant to the dimensions of Map 850-A, in violation of the amended restrictive covenants, are now free of the restriction because two years have elapsed since the noticeable violations occurred. However, under the amended restrictive covenants,[15] VTS property holders have the right to file suit each time a property owner attempts a resubdivision of any lot in VTS. Therefore, intervenors' rights have not prescribed as to IMS's actions attempting to violate VTS's amended restrictive covenants.
As for IMS's argument that the trial court erroneously relied on Brier Lake, supra, we note that the trial court merely added that reasoning to emphasize why Map 697-B should be the controlling plat. The trial court opined that under Brier *606 Lake, a resubdivision of VTS would require unanimous consent among VTS property holders because the smaller and more numerous lots on Map 850-A would be more restrictive than originally planned. We do not see the need to analyze this case under Brier Lake because we have already determined that Map 850-A was an invalid plat since it was not submitted to the planning commission for approval before recordation as required by the Village of Folsom ordinance. Therefore, this assignment of error is without merit.

Damages and Attorney's Fees

(Eleventh Assignment of Error)
IMS's final assignment of error is that the trial court erred in failing to award IMS damages and attorney's fees. IMS claimed to have sustained damages from lost sales on lots pursuant to Map 850-A. IMS also claimed it was entitled to recovery of attorney's fees incurred when forced to prove facts denied by defendant, the Village of Folsom, in response to IMS's Request for Admissions. The Village of Folsom pled the discretionary acts defense under La. R.S. 9:2798.1. IMS supplemented and amended its petition shortly before trial to state a claim for damages pursuant to a federal civil rights action (42 USCA 1983). The trial court denied all of IMS's claims for attorney's fees and damages, and found no basis for a 42 USCA 1983 action, dismissing IMS's petition.
IMS's action for damages is apparently predicated upon alleged tortious conduct by the Village of Folsom Planning Commission in enacting the resolution declaring Map 850-A an invalid resubdivision plat for VTS, and filing the resolution in the public records on May 21, 1987. IMS also alleges that when the Village of Folsom denied the building permit for Lot 14-A pursuant to Map 850-A, it did so arbitrarily and capriciously, causing IMS to sustain a potential lost sale on Lot 14-A[16] and lost sales on all other lots it owns on Map 850-A. The trial court in its reasons for judgment ruled, "[a]ny actions taken by the Village of Folsom involved the legislative function of government and do not create tort liability under state law nor federal civil rights acts." For the following reasons, we agree.

The Discretionary Acts Defense
La. R.S. 9:2798.1(B) provides that "[l]iability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." (Emphasis added.) An exception to the rule for discretionary acts is found in La. R.S. 9:2798.1(C)(2), which states it does not apply "[t]o acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless or flagrant misconduct." The Louisiana Supreme Court, relying on Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), has devised a two-step test which courts generally employ to determine whether the discretionary function exception applies. First, if a statute, regulation or policy prescribes a particular course of action, there is no choice or discretion involved, and the defense does not apply. However, when acts of government employees involve an element of choice, they are protected by the discretionary acts defense if the choices are grounded in social, economic or political policy. Simeon v. Doe, 618 So.2d 848, 852-853 (La.1993); Lambert v. Riverboat Gaming Enforcement Div., 96-1856, pp. 8-9 *607 (La.App. 1st Cir.12/29/97), 706 So.2d 172, 177-178, writ denied, 98-0297 (La.3/20/98), 715 So.2d 1221.
In the instant case, the Village of Folsom Planning Commission acted as a legislative body pursuant to authority granted to it in accordance with La. R.S. 33:101, et seq. The planning commission had legislative authority to pass ordinances and resolutions to regulate subdivisions. La. R.S. 33:110-112. Furthermore, La. R.S. 33:4773(D) provides in pertinent part: "[t]he performance of any enforcement procedure in connection with any building code shall be deemed to be a discretionary act and shall be subject to the provisions of R.S. 9:2798.1." (Emphasis added.) La. R.S. 33:4771(5) defines an "enforcement procedure" as: "... any act, action, or failure to take action by a public servant ... in connection with the implementation of any provision of a building code, including but not limited to the examination or review of any plan, drawing, or specifications, the conducting or completion of any inspection, the issuance, denial, or revocation of any permit, permission, license, or certificate, and the granting of any approval of construction." (Emphasis added.) Thus, the issuance of a building permit is specifically defined by statute to be a discretionary act. Ayers v. Brazzell, 26-068, p. 5 (La.App.2d Cir.9/21/94), 648 So.2d 406, 409.
The duly enacted resolution recorded on May 21, 1987, put the public on notice that the Village of Folsom did not recognize Map 850-A as a valid resubdivision plat for VTS. The testimony of the C.E.O. of IMS, Michael Magee, made perfectly clear that IMS was aware of the conflicting subdivision maps, the amended restrictive covenants for VTS restricting resubdivision of lots, the applicable municipal ordinances restricting the size of subdivision lots, and the resolution declaring the invalidity of Map 850-A when IMS purchased the vacant lots in VTS on August 30, 1995. Mr. Magee also testified that IMS employed an attorney to investigate the title before making the purchase and taking possession of the property. Since IMS had the title examined, it is charged with knowledge of what the public records revealed, that is, the Village of Folsom did not recognize Map 850-A. Addison v. Thompson, 556 So.2d 195, 198 (La.App. 2d Cir.), writ denied, 559 So.2d 1386 (La. 1990).
When the prospective purchaser of Lot 14-A was denied a building permit by the Village of Folsom because it was on a lot designated on an invalidly recorded subdivision map, the Village of Folsom was performing a discretionary act pursuant to a policy decision regarding an invalid subdivision map. A municipality may refuse a building permit when the proposed construction will result in the violation of an ordinance. Bode v. Jefferson Parish, 309 So.2d 730, 731 (La.App. 4th Cir.1975). The issuance of the building permit in the instant case would have violated the municipal ordinance restricting lot sizes in subdivisions because some of the lots on Map 850-A were not in compliance with the ordinance. The planning commission made a policy decision regarding the two conflicting maps when it recorded the resolution denying the validity of Map 850-A. The denial of the building permit was clearly a result of the Village of Folsom policy decision to not recognize Map 850-A. Therefore, we hold that the discretionary act performed by the Village of Folsom in refusing a building permit on a lot pursuant to an invalid resubdivision plat was an action for which immunity from liability is statutorily provided. The trial court did not err in dismissing IMS's claim for damages in tort.

*608 The § 1983 Claim
Recovery for damages under Title 42, § 1983 of the United States Code requires a plaintiff to allege and prove two essential elements: (1) that the defendant's conduct occurred under color of state law, and (2) that the defendant's conduct deprived plaintiff of a right, privilege or immunity secured by the Constitution or a law of the United States. Moresi v. State Through Dept. of Wildlife and Fisheries, 567 So.2d 1081, 1084 (La.1990). "However, when an official performs a function integral to the judicial process or a traditional legislative function, the official is absolutely immune from § 1983 liability for acts performed in those capacities. Additionally, a qualified immunity generally applies to most acts of government officials." Lambert v. Riverboat Gaming Enforcement Div., 96-1856 at p. 5, 706 So.2d at 176, citing, Moresi, 567 So.2d at 1084. In Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the United States Supreme Court articulated a new objective standard with regard to the qualified immunity defense, stating that government officials performing discretionary functions generally are shielded from liability for civil damages, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Lambert v. Riverboat Gaming Enforcement Div., 96-1856 at p. 6, 706 So.2d at 176.
As previously discussed, the Village of Folsom's action in refusing to issue a building permit on a lot designated on an invalid subdivision plat was a discretionary act. Therefore, the Village of Folsom will be liable for damages under the civil rights statute only if it violated IMS's clearly established constitutional rights. IMS has no clearly established constitutional right which has been violated. Michael Magee, speaking for IMS, admitted at trial that IMS was aware of the conflicting subdivision maps and the fact that the Village of Folsom did not recognize Map 850-A prior to the purchase of the vacant lots. Mr. Magee also acknowledged that IMS was aware of the municipal ordinance restricting lot sizes and the amended restrictive covenants for VTS requiring written consent of a majority of property holders before the lots could be resubdivided. Mr. Magee testified that IMS purchased the property anyway, believing that the resolution declaring the invalidity of Map 850-A would ultimately be found to have no legal effect. (Indeed, while the resolution did not have the effect of invalidating the map, it served to place those relying on the public record that the municipality did not recognize the map as valid and would not issue building permits in accordance with it.) In essence, IMS took a calculated risk and made a business decision when purchasing the lots in VTS. Thus, IMS could not have been surprised by the series of events leading to its inability to sell lots designated only on Map 850-A. IMS's allegations against the Village of Folsom and its officials define no duty owed to IMS and breached by the Village of Folsom. Therefore, we find no liability for the Village of Folsom's discretionary acts under 42 USCA 1983. The trial court did not err in dismissing IMS's § 1983 claim.

Attorney's Fees
IMS contends the trial court erred in failing to award attorney's fees incurred when it was forced to prove facts denied by defendant in response to IMS's Request for Admissions. IMS relies on La. Code Civ. P. art. 1472 which provides for reasonable attorney's fees when a party fails to admit the truth of a requested matter, and truth is later proven. The Request for Admission at issue is: *609 "[p]lease admit that the Folsom officials who signed on Map 850-A were approving the re-subdivision of Village Trace as reflected on Map 850-A." The Village of Folsom responded, "[d]enied as written, as the admission does not state a fact, but rather amounts to a conclusion of law." The Village of Folsom had reasonable ground to believe that it might prevail in this matter, and therefore had reason to deny the requested admission. Furthermore, we agree that the requested admission of fact was an attempt to state a conclusion of law. We previously reviewed the trial court's ruling and found that the resubdivision Map 850-A was not validly approved by the Village of Folsom Planning Commission before it was recorded in the public records. Furthermore, Map 850-A was not recorded in the public records prior to the date of enactment of the ordinance requiring planning commission approval. The trial court did not err in denying IMS an award for attorney's fees. Accordingly, this assignment of error is without merit.

CONCLUSION
For the reasons assigned, the judgment of the district court denying IMS's claims for damages and attorney's fees, and declaring Map 697-B to be the official plat for Village Trace Subdivision in the Village of Folsom, Louisiana, is hereby affirmed. Plaintiff-Appellant (IMS) is cast for all costs.
AFFIRMED.
NOTES
[1] Judge Ian W. Claiborne, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Hibernia National Bank was dismissed from the lawsuit on October 31, 1997.
[3] The Zoning Ordinance of the Village of Folsom, in Comprehensive Land Use Ordinance # 84-4 effective August 6, 1984, referred to June 7, 1982, as the date that the Village of Folsom organized and created the Planning and Zoning Commission. This is the only reference found in the record regarding the establishment of the planning commission.
[4] La. R.S. 33:117 gives a local planning commission exclusive jurisdiction over plats and subdivisions of land and La. R.S. 33:111 authorizes the planning commission's scope of control over subdivisions.
[5] The act of sale contains several pages purporting to limit the usual warranties.
[6] Lot 4 had the same dimensions on both Map 697-B and Map 850-A.
[7] Map 697-B was signed by the Folsom Town Council sometime in 1980 or 1981, before the organization of the planning commission on June 7, 1982. Map 850-A was signed by the Folsom Town Council sometime in May 1983.
[8] Admissions of Fact in the record reflect that the officials who signed Map 850-A were acting in their official capacity as elected officials for the Village of Folsom. Map 697-B was also officially signed by the town officials at a Folsom Town Council meeting.
[9] See Folsom Subdivision Ordinance of 1983, Ordinance # 84-4, Sec. 2.202(2), effective August 6, 1984.
[10] See Ordinance, Sec. 1.302(35).
[11] La. R.S. 33:111 requires the written approval of the planning commission prior to recording of a subdivision plat.
[12] See Bruce v. Simonson Investments, Inc., 197 So.2d 754, 759 (La.App. 4th Cir.1967), affirmed, 251 La. 893, 207 So.2d 360 (1968), where the appellate court found a recordation of protective covenants in the conveyance records did not constitute a "violation" for purposes of commencement of the two-year prescriptive period.
[13] See Harris v. Pierce, 73 So.2d 330, 334 (La.App.Orleans 1954), for a similar analysis in a suit instituted while the defendants were in the course of erecting a building complained of by the plaintiffs to be in violation of subdivision restrictive covenants. The court held the plaintiffs' right to file suit was timely exercised under La. R.S. 9:5622 (repealed; now La. Civ.Code art. 781).
[14] Although the heading and comments to La. Civ.Code art. 781 refer to the time period contained therein as a liberative prescription period, it is evident that the Article actually creates a peremptive time period for instituting suits for relief arising out of a violation of building restrictions. Once the two year peremptive period passes, the cause of action no longer exists.
[15] The Amendments to Restrictive Covenants of the Village Trace Subdivision, recorded December 2, 1983, provide in pertinent part, "[t]o amend Article 14 of the restrictive covenants to read: `No lot may be subdivided for private sale or otherwise...'" and "[t]o supplement the restrictive covenants by adding the following paragraph: `The property may be resubdivided only with the written consent of the majority of the property holders in the said subdivision.'" (Emphasis added.)
[16] Lot 14-A on Map 850-A consists of a part of Lot 12 on Map 697-B.