985 So.2d 171 (2008)
CITY OF HAMMOND
v.
PARISH OF TANGIPAHOA, Great Southern Investment and Asset Management, Inc., Boardwalk Apartments, and Cameo Development.
No. 2007 CA 0574.
Court of Appeal of Louisiana, First Circuit.
March 26, 2008.
*174 Ron S. Macaluso, Macaluso & Jordan, Hammond, LA, for Plaintiffs-Appellees, City of Hammond and Nicky Muscarello, Sr.
Scott M. Perrilloux, District Attorney, Clifton T. Speed, Assistant District Attorney, Greensburg, LA, for Defendant-Appellant, Parish of Tangipahoa.
Brett P. Furr, Matthew L. Mullins, Taylor, Porter, Brooks & Phillips, L.L.P., Baton Rouge, LA and J. Parker Layrisson, Scandurro & Layrisson, L.L.C., Ponchatoula, LA, for Defendants-Appellants, Great Southern Investment and Asset Management, Inc., Cameo Development, Boardwalk Apartments, and WFK & Associates, L.L.C.
Before PARRO, KUHN, and DOWNING, JJ.
PARRO, J.
WFK & Associates, L.L.C. (WFK), Great Southern Investment and Asset Management, Inc. (Great Southern), and Cameo Development Corporation (Cameo)[1] (jointly, the developers), along with the Parish of Tangipahoa (the Parish),[2] appeal a judgment against them and in favor of the City of Hammond. The judgment *175 ordered the developers to forego the usual procedure for obtaining final approval for their subdivision development plans and to present those plans at a public hearing before the elected Tangipahoa Parish Council (the Parish Council), rather than the appointed Tangipahoa Parish Planning Commission (the Planning Commission).
The judgment also included a writ of mandamus, ordering the Parish Council to review and revise its ordinances regarding the Planning Commission's rules concerning approval or disapproval of subdivision development plans and further ordering it to schedule and hold a public hearing on the development plans at issue. The Parish appeals the writ of mandamus.

FACTUAL AND PROCEDURAL BACKGROUND
This litigation involves a $40 million, 300-unit apartment complex planned by the developers for construction on 44 acres owned by WFK outside the city limits of Hammond in an unincorporated area of the Parish. The proposed development is near Southeastern Louisiana University and is planned to accommodate student renters. Great Southern and Cameo are WFK affiliates and are under contract to develop the property, which is to be called Boardwalk Apartments. The property is not subject to any comprehensive zoning or land use plan, but is subject to subdivision regulations of the Parish, which require approvals from various public entities before final approval can be granted by the Planning Commission. The developers had secured approval from the Parish Drainage District, the Department of Health and Hospitals, and the State Fire Marshall, as well as preliminary approval from the Planning Commission.[3] The developers had not yet sought or obtained the final approval of the Planning Commission, which would allow construction to commence.
The City of Hammond (the City) opposed the development, which was to be built on property immediately adjacent to, but outside of, the city limits, and resolved to "request and demand" that the Parish receive approval from the City before final approval of the project. This request was rejected in two meetings of the Parish Council. Following those rejections, the City passed a resolution authorizing litigation concerning the project. The City's petition requested a declaratory judgment that the subdivision ordinances of the Parish were unconstitutional, injunctive relief to set aside the preliminary approval and permanently stop the development project, and a writ of mandamus to the responsible public entities. The City added Nicky Muscarello, Sr., a former city councilman, as an additional party plaintiff. Exceptions raising the objections of no right of action and no cause of action filed by the developers were denied.
Before trial, the parties stipulated that the preliminary injunction hearing would serve as a trial of all the issues, including the preliminary and permanent injunctive relief sought by the plaintiffs.[4] After trial, the court found that the subdivision ordinance was not unconstitutional and denied the plaintiffs' requests for a declaratory *176 judgment and for injunctive relief. However, the court ordered the developers to depart from the normal process and obtain final approval for this particular project from the Parish Council, rather than the Planning Commission. The court also issued a writ of mandamus to the Parish Council, ordering it to review its ordinances regarding the Planning Commission's rules and to revise those ordinances to allow meaningful public participation in decisions involving subdivision development. In particular, the Parish Council was ordered to hold a public hearing concerning this project by January 8, 2007. The developers filed a devolutive appeal; the Parish suspensively appealed only the mandamus portion of the judgment directed to it.[5]

MOTIONS TO SUPPLEMENT THE RECORD
As a preliminary matter, the City and Muscarello argue that the developers' and the Parish's appeals have become moot, because on January 8, 2007, pursuant to the writ of mandamus, the Parish Council heard the developers' plans in a public hearing and voted to deny final approval of the project. The City moved to supplement the record on appeal to include evidence of this decision. In a second motion, it asked to supplement the record to include a copy of Tangipahoa Parish Ordinance No. 07-89, which, in response to the writ of mandamus, was passed by the Parish Council on September 10, 2007, and signed by the council president on September 11, 2007.[6]
The developers oppose the motions, citing wording in the judgment that the decision of the Parish Council would not affect any right or action that any person or party may have as a result of that decision. They also note the City's agreement in open court "that neither party waives any right of appeal." They also contend that, taken to its logical conclusion, the City's argument would preclude redress in a court of law when a judgment is adverse to one party's interests and the adverse party takes steps to effectuate that judgment while an appeal is pending. Finally, in opposing the motion to supplement the record, the developers contend this court is not allowed to receive new evidence of matters outside the lower court's record, particularly concerning matters that had not yet occurred when the trial was held.
Louisiana Code of Civil Procedure article 2164 states that the appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The record on appeal is that which is sent by the trial court to the appellate court and includes the pleadings, court minutes, transcript, jury instructions, judgments, and other rulings, unless otherwise designated. Tranum v. Hebert, 581 So.2d 1023, 1026 (La.App. 1st Cir.), writ denied, 584 So.2d 1169 (La. 1991). An appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence. Id. at 1026; Guedry v. Fromenthal, 633 So.2d 287, 289 (La.App. 1st Cir.1993); MMR-Radon Constructors, Inc. v. Continental Ins. Co., 97-0159 (La.App. 1st Cir.3/3/98), 714 So.2d 1, 4, writ denied, 98-1485 (La.9/4/98), 721 So.2d 915; Dawson v. Cintas Corp., 97-2275 (La.App. 1st *177 Cir.6/29/98), 715 So.2d 165, 167. As an appellate court, we have no jurisdiction to receive new evidence. Hudson v. East Baton Rouge Parish School Bd., 02-0987 (La.App. 1st Cir.3/28/03), 844 So.2d 282, 284.
Although this court is generally precluded from admitting new evidence, we are mandated by Article 202(A) of the Louisiana Code of Evidence to take judicial notice of the laws of the United States, of every state, territory, and other jurisdiction of the United States, and of the ordinances enacted by any political subdivision within the court's territorial jurisdiction whenever certified copies of the ordinances have been filed with the clerk of that court. See, e.g., Cat's Meow, Inc. v. City of New Orleans through Dept. of Finance, 98-0601 (La.10/20/98), 720 So.2d 1186, 1192 n. 7; see also LSA-R.S. 13:3712(B). In addition, a court must take judicial notice of, among other things, ordinances enacted by any political subdivision of the State of Louisiana, if a party requests it and provides the court with the information needed by it to comply with the request. LSA-C.E. art. 202(B)(1)(c); see State v. Davis, 93-0599 (La.4/11/94), 634 So.2d 1168, 1171. Judicial notice of such legal matters may be taken at any stage of the proceeding. LSA-C.E. art. 202(D).
In the first motion to supplement the record filed on June 6, 2007, it was brought to our attention that after the district court signed its judgment on December 27, 2006, the Parish Council held a public meeting, as mandated by the court. During that meeting on January 8, 2007, the Parish Council denied final approval of the proposed development project. The first motion submitted a copy of the minutes of that meeting and requested this court to admit this evidence and consider the effect of this action on the issues in the appeal.
However, since that meeting occurred after the district court signed its judgment, the minutes of the meeting could not possibly be a part of the record sent to this court. Nor do the minutes of the Parish Council fall within any of the criteria of LSA-C.E. art. 202 that might allow this court to take judicial notice of such evidence. Lacking that, we have no legal authority or jurisdiction to allow supplementation of the record with this information. Therefore, considering the applicable legal principles, we must deny the June 6, 2007 motion to supplement the record.
The second motion to supplement the record informed this court that the Parish Council had passed Tangipahoa Parish Ordinance Number 07-59 on September 10, 2007; a copy of the ordinance was submitted with the motion. That ordinance required any developer/owner of a proposed multi-family dwelling in an unincorporated area of the Parish, but within one thousand feet of a municipality, to notify the mayor of the municipality and various other public officials whose agencies or departments might be affected by the proposed project. This second motion consists of evidence of an ordinance of a political subdivision. Furthermore, a party has requested that this court consider it as part of the record on appeal and has provided this court with the information needed for us to comply with the request. Because the ordinance fits the criteria of LSA-C.E. art. 202(B)(1)(c), this court must take judicial notice of it. Accordingly, the October 22, 2007 motion to supplement the record is granted.

MOOTNESS
The City contends this appeal is moot because the actions mandated by the trial court judgment have already taken place, leaving nothing to be litigated. Having concluded that this court may not supplement *178 the record with the minutes of the January 8, 2007 meeting, we can consider only whether the ordinance passed by the Parish Council on September 10, 2007, renders this appeal moot.
It is well settled that courts will not decide abstract, hypothetical, or moot controversies, or render advisory opinions with respect to such controversies. See St. Charles Parish Sch. Bd. v. GAF Corp., 512 So.2d 1165, 1170-71 (La.1987). Cases submitted for adjudication must be justiciable, ripe for decision, and not brought prematurely. A "justiciable controversy" is one presenting an existing actual and substantial dispute involving the legal relations of parties who have real adverse interests and upon whom the judgment of the court may effectively operate through a decree of conclusive character. A "justiciable controversy" is thus distinguished from one that is hypothetical or abstract, academic, or moot. Id. at 1171; St. Charles Gaming Co., Inc. v. Riverboat Gaming Com'n, 94-2679 (La.1/17/95), 648 So.2d 1310, 1315.
An issue is moot when a judgment or decree on that issue has been "deprived of practical significance" or "made abstract or purely academic." Thus, a case is moot when a rendered judgment or decree can serve no useful purpose and give no practical relief or effect. If the case is moot, there is no subject matter on which the judgment of the court can operate. That is, jurisdiction, once established, may abate if the case becomes moot. The controversy must normally exist at every stage of the proceeding, including the appellate stages. A case may become moot for several reasons, including because the law has changed; because defendant has paid funds owed and no longer wishes to appeal, notwithstanding plaintiff's desire to obtain a higher court ruling; because allegedly wrongful behavior has passed and could not reasonably be expected to recur; because a party could no longer be affected by a challenged statute, for example, a law regulating rights of minors when the party, through lapse of time, is no longer within the age brackets governed by the statute; or because a party has died. Cat's Meow, 720 So.2d at 1193 (citations omitted).
It is not enough that the requirements of justiciability are satisfied when the suit is initially filed; the requirements must remain throughout the course of litigation up to the moment of final disposition. When a challenged article, statute, or ordinance has been amended or expired, mootness may result if the change corrects or cures the condition complained of or fully satisfies the claim. Further, if it is concluded that the new legislation was specifically intended to resolve the controversy, a court may find that the case or controversy is moot. In such a case, there may no longer be an actual controversy for the court to address, and any judicial adjudication on the matter would be an impermissible advisory opinion. Cat's Meow, 720 So.2d at 1193-94.
Reviewing the ordinance passed by the Parish Council in September 2007, we note that it requires the developer/owner of a proposed development to give notice to various public officials who serve in a municipality that is within one thousand feet of the proposed development, stating this should be done:
. . . when the Parish Engineer and Parish Public Works Director determines [sic] that cooperation between the parish and any incorporated area within the parish is necessary to address adequate infrastructure needs of the proposed development.

*179 The developer/owner or his agent may be required to give 30 day advance written notice by certified mail of the proposed development, including the date, time and place of the Planning Commission public hearing and a narrative description of the proposed development and provide contact information to [certain designated public officials]. . . .
The ordinance also states that "[t]his Notification is for information purposes only and comments may or may not effect [sic] the proposed Development[.]"
This ordinance includes many discretionary terms. First, notice is only required when the Parish Engineer and Parish Public Works Director determine that cooperation between the parish and any incorporated area within the parish is necessary. Apparently, if both of these persons do not agree that such cooperation is necessary, no notice is required, regardless of what the adjacent incorporated area or municipality may desire. The ordinance further states the developer/owner of the proposed development "may be required" to give thirty days advance notice, which notice is to include a narrative description of the proposed development, along with information concerning the Planning Commission's public hearing. The ordinance does not state that the notice provision is mandatory. And, more significantly, the ordinance states in a concluding sentence that the notification "is for information purposes only and comments may or may not" affect the proposed development.
We do not see how this ordinance provides any protection or benefit to an affected municipality beyond what was already provided in the Planning Commission's procedures. According to the testimony at trial, the Planning Commission always holds a public hearing when a new development is proposed, either when the preliminary application is discussed or when the final approval is being considered. In fact, the evidence reveals that the subdivision regulations require a public hearing before final approval of a proposed subdivision.[7] According to Luke Benner, who served on the Planning Commission, the public hearing is usually held at the meeting when the preliminary application is considered. He further testified that in this case, a public hearing before the Planning Commission was held in connection with the application for preliminary approval of the Boardwalk Apartment project and was attended by "a full house of those that were against the proposal." Some of those who commented on the proposal brought up the City's and adjoining residential neighborhoods' concerns about residential density, traffic, drainage, sewage, public safety, and other potential infrastructure problems. However, Benner said the Planning Commission had no authority to take those concerns into consideration, because its authority was limited to confirming that the developers had followed the applicable Parish subdivision regulations. Those regulations required approval of the project by various public entities, such as the Parish Drainage District, the Department of Health and Hospitals, and the State Fire Marshall, but the Planning Commission did not have to get consent from any other entity before approving or disapproving a development project. Nor did the Parish regulations require the Planning Commission to respond to the concerns of the general public, neighbors, or adjoining municipalities when considering a development project in an unincorporated area of the parish.
*180 Therefore, before the September 2007 ordinance was passed, the public hearing process, while certainly informative, did not require the Planning Commission to take into consideration the concerns of adjoining incorporated areas or other neighbors when considering a development project for approval or disapproval. Moreover, there was no formal procedure for modification of the proposed development plans by the Planning Commission in order to address such concerns. The September 2007 ordinance passed by the Parish Council does not alter that process in any significant respect. Ultimately, the notification is not mandatory, and the comments that might be made at a public hearing under the new ordinance "may or may not" affect the proposed development. Therefore, since the new ordinance does not require the Planning Commission to respond to or consider the issues that may be raised at the public hearing, the notice and public hearing process under the new ordinance does not correct or eliminate the City's concerns. Because the September 2007 ordinance does not actually cure any of the perceived problems raised by the City in this litigation, its passage by the Parish Council does not moot this controversy.

ANALYSIS
The Parish contends the district court erred as a matter of law in mandating that the Parish Council revise its procedures and enact particular legislation. It argues that approval of regulations and ordinances concerning subdivision development is a legislative function, which the court had no authority to exercise. In addition, the Parish contends the court erred in ordering the Parish Council to exercise final approval or disapproval of this particular project, when it had specifically delegated to the Planning Commission the authority to approve or deny development projects in accordance with the applicable statutes and ordinances.
The developers assign as error: whether the City or Muscarello has a cause or right of action concerning a development beyond the City's boundaries; whether the court erred in approving the subdivision regulations, but then exceeded its constitutional authority in exercising a legislative function by adding a condition for final approval applicable only to the developers; whether this condition violates the Louisiana Constitution by being applicable only to the developers in this case and not to any other landowners or developers; and whether the City waived its right to challenge the constitutionality of the ordinances and Parish regulations by failing to serve a copy of the petition on the Louisiana Attorney General.
The initial argument of the City and Muscarello was that this action is moot. Since we have already determined that it is not, we note their alternative argument is that because the Parish Council has the final authority over actions of the Planning Commission, the court's mandamus order was appropriate. They also claim that the developers were not named as "defendants" in the petition, but simply as "interested persons" who were named as "parties" in the first supplementing and amending petition. They contend that since only a defendant can raise an exception, the developers had no standing to claim no right or cause of action. They further argue that the City had a right of action to restrain action by a public body affecting its safety, drainage, traffic, law enforcement, and funds.
We address first the mandamus issue raised by the Parish. According to LSA-C.C.P. art. 3863, a writ of mandamus may be directed to a public officer to compel the performance of a ministerial *181 duty required by law. Mandamus is an extraordinary remedy which is used sparingly by the courts to compel something that is clearly required by law, and only where it is the sole available remedy or where the delay occasioned by the use of any other remedy would cause an injustice. See LSA-C.C.P. art. 3862; Webre v. Wilson, 95-1281 (La.App. 1st Cir.4/4/96), 672 So.2d 1124, 1130. Mandamus lies only to compel the performance of purely ministerial duties. Our jurisprudence is clear that such a writ may not issue to compel performance of an act which contains any element of discretion, however slight. Id. Further, mandamus is to be used only when there is a clear and specific legal right to be enforced or a duty which ought to be performed. It never issues in doubtful cases. Thornton ex rel. Laneco Constr. Systems, Inc. v. Lanehart, 97-1995 (La. App. 1st Cir.12/28/98), 723 So.2d 1118, 1122, writ denied, 99-0276 (La.3/19/99), 740 So.2d 121; Wiginton v. Tangipahoa Parish Council, 00-1319 (La.App. 1st Cir.6/29/01), 790 So.2d 160, 163, writ denied, 01-2541 (La.12/7/01), 803 So.2d 971.
According to LSA-R.S. 33:101.1,
[T]he act of approving or disapproving a subdivision plat is hereby declared a legislative function involving the exercise of legislative discretion by the planning commission, based upon data presented to it; provided that any subdivision ordinance enacted by the governing authority of a parish or municipality or the acts of the planning commission, or planning administrator shall be subject to judicial review on the grounds of abuse of discretion, unreasonable exercise of police powers, an excessive use of the power herein granted, or denial of the right of due process. The right of judicial review of a subdivision ordinance shall not be limited by the foregoing, however, nothing contained in this Subpart or in any subdivision ordinance adopted by a parish or municipality shall be construed as imposing upon such parish or municipality a duty, special or otherwise, to or for the benefit of any individual person or group of persons.
The Louisiana Supreme Court, relying on Berkovitz by Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), has devised a two-step test which courts generally employ to determine whether an action is a discretionary function.[8] First, if a statute, regulation, or policy prescribes a particular course of action, there is no choice or discretion involved. However, when acts of government employees involve an element of choice, they are discretionary acts if the choices are grounded in social, economic, or political policy. Simeon v. Doe, 618 So.2d 848, 852-53 (La.1993); Lambert v. Riverboat Gaming Enforcement Div., 96-1856 (La.App. 1st Cir.12/29/97), 706 So.2d 172, 177-78, writ denied, 98-0297 (La.3/20/98), 715 So.2d 1221. Neither the trial court nor a reviewing court may substitute its wisdom for that of the governing body, except when there is an abuse of discretion or an excessive use of power. Investment Mgmt. Services, Inc. v. Village *182 of Folsom, 00-0832 (La.App. 1st Cir.5/11/01), 808 So.2d 597, 604.
The district court judgment in this case states, in pertinent part:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Application for Declaratory Judgment be denied. . . .
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Motion for Injunctive Relief be denied. . . .
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that if and when [the developers] should submit [their] application(s) for final approval of that development which is the subject of this litigation, that the TANGIPAHOA PARISH COUNCIL-PRESIDENT GOVERNMENT shall hold a duly and legally noticed public hearing before the Tangipahoa Parish Council, rather than the Tangipahoa Parish Planning Commission, at which hearing the public shall be given an opportunity to participate by allowing public comments on said application and issuance of final approval on the permit for the Boardwalk Apartment development. No permits shall be issued in connection with the application until this public hearing is duly held and thereafter voted upon by the Tangipahoa Parish Council. The decision of the Tangipahoa Parish Council as to this application does not affect any right and/or action that any person or party may have as a result thereof. Excepting for the substitution of the TANGIPAHOA PARISH COUNCIL-PRESIDENT GOVERNMENT for the Tangipahoa Parish Planning Commission all of the rules, notice and procedures currently in place shall apply to this particular final approval process.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Writ of Mandamus be and is hereby granted. As such, the TANGIPAHOA PARISH COUNCIL-PRESIDENT GOVERNMENT is ordered to review and revise its ordinances regarding the Tangipahoa Parish Planning Commission's rules and procedures and that [sic] the TANGIPAHOA PARISH COUNCIL-PRESIDENT GOVERNMENTS ordinances regarding subdivisions such that all these ordinances allow for meaningful public participation and input and with the corresponding obligation on the part of this parish government to consider this public input prior to and in connection with the application process. Furthermore, this review and revision must permit the public a level of participation that meets and satisfies the public's constitutional and legal due process. All of the above must be completed on or before January 31, 2007.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the public hearing on the [developers'] application for final approval and the vote thereon be held in accordance with the law and no later than the Parish Council's January 8, 2007, meeting.
Mandamus lies only to compel performance of purely ministerial duties; it may not issue to compel performance of an act which contains any element of discretion, however slight. In the matter before us, the Planning Commission had authority granted to it by the Parish Council to approve or disapprove subdivision projects, following certain procedures and ordinances that had been established by the Parish Council. According to LSA-R.S. 33:101.1, the act of approving or disapproving a subdivision plat is statutorily recognized and defined as a legislative function involving the exercise of legislative discretion by the Planning Commission. *183 As such, a writ of mandamus should not have been issued to compel the Parish, the Parish Council, and/or the Planning Commission to promulgate new or revised ordinances and procedures affecting the approval process for subdivision projects, which is a purely legislative function.
Perhaps some corrective action would have been legally appropriate if the district court had determined that the current procedures and ordinances covering approval or disapproval of subdivision developments were unconstitutional. However, although the court mentioned "due process," it did not conduct an analysis of whether the City was owed due process and did not conclude that the statutory scheme denied the City or its citizens due process. Rather, the court specifically stated in oral reasons:
So, for the purposes of the Declaratory Judgment, that will be denied. I do not find that it's unconstitutional, a violation of the Home Rule Charter, the State of Louisiana and all of that.
Even if some corrective action were necessary to cure an unconstitutional ordinance, the passage of a new or revised ordinance would be strictly a legislative function. The legislative body, in this case the Parish Council, could use its discretion and decide not to pass new or revised legislation, but to simply repeal the unconstitutional provision. Also, the legislative body would have discretion to choose among various curative provisions, should it decide to pass a new or revised ordinance to cure the unconstitutionality of the previous ordinance. Again, these would be legislative functions with discretion over the means by which a court's declaratory judgment would be effectuated. Therefore, even if the court had declared the current ordinances and procedures unconstitutional, it should not have mandated the legislative body to take specific corrective action.
We must conclude that the district court legally erred by: mandating that the Parish Council and the Planning Commission follow a different procedure for final approval of this particular development; ordering the Parish, through the Parish Council, to change its procedures and ordinances; and mandating that these legislative functions be accomplished in accord with the court's directions and timing. It is clear from the oral reasons that the court recognized its judgment may be on legally shaky grounds, since it stated, "I'm probably going to do something that is going to open a little can of worms, but that's okay." This court concludes that it was not "okay" for the court to issue a writ of mandamus to compel a legislative body to pass legislation with certain provisions specified by the court.[9]
Therefore, if the post-trial actions of the developers, the Parish through the Parish Council, or the Planning Commission were performed solely to satisfy the court's orders and writ of mandamus, those entities must now be given the opportunity to reconsider those actions. Like the district court, however, we cannot mandate that the Parish Council or the Planning Commission take particular steps in response to this court's judgment. Nor can we invalidate the post-trial decisions made by the parties. Therefore, we do not remand this matter, because the decision to take or not to take certain actions upon receipt of this court's judgment is not a decision that the district court can make.

CONCLUSION
Based on the foregoing, the June 6, 2007 motion to supplement the record is denied; *184 the October 22, 2007 motion to supplement the record is granted. The judgment of December 27, 2006, is affirmed insofar as it approved trial by ordinary proceeding as to all the issues in the case, declined to enter a declaratory judgment, and denied injunctive relief. The judgment is reversed insofar as it ordered the developers to submit its application for final approval of the development project at issue to the Parish Council, rather than the Parish Planning Commission, and insofar as it ordered the Parish Council to hold a public hearing on that permit application. The portion of the judgment granting the writ of mandamus and ordering the Parish Council to take specific actions, including reviewing and revising its ordinances, is also reversed. All costs of this appeal, in the amount of $2,548.50, are assessed against the City of Hammond.
JUNE 6, 2007 MOTION TO SUPPLEMENT THE RECORD IS DENIED.
OCTOBER 22, 2007 MOTION TO SUPPLEMENT THE RECORD IS GRANTED.
PORTION OF JUDGMENT DENYING DECLARATORY AND INJUNCTIVE RELIEF IS AFFIRMED.
PORTIONS OF JUDGMENT ORDERING SPECIFIC ACTIONS TO BE TAKEN BY THE PARISH COUNCIL AND GRANTING A WRIT OF MANDAMUS ARE REVERSED.
DOWNING, J., concurs.
NOTES
[1] The petition named Cameo Development; testimony at trial established the full name of this party is Cameo Development Corporation.
[2] The petition named only the Parish of Tangipahoa as a defendant. According to the City, the other named parties were not "defendants," but were included because of their status as "interested persons" who had or claimed an interest that would be affected by the relief sought. See LSA-C.C.P. art. 1880. Boardwalk Apartments was also named in that capacity. However, Boardwalk Apartments is merely the name of the proposed apartment complex; it is not a juridical person capable of being a party to a lawsuit WFK was added as an "interested person" in the first supplemental and amending petition.
[3] The developers also expected imminent approval from the Army Corps of Engineers.
[4] The parties also agreed to convert the entire proceeding to an ordinary proceeding, so all the issues, including injunctive relief, the request for a declaratory judgment, and the request for a writ of mandamus, could be tried at one time. This decision was made by the parties, was accepted by the court after both sides had submitted all of their evidence at trial, and was incorporated in the judgment.
[5] Apparently, the Parish overlooked the fact that it had filed a suspensive appeal; it took steps to comply with the writ of mandamus and at oral arguments, counsel for the Parish stated that, "in hindsight, we should have suspensively appealed."
[6] Both motions were referred for decision by the panel considering the merits of the appeal.
[7] According to the Parish's brief to this court, this requirement is codified at Tangipahoa Parish Code of Ordinances Section 20:5-1.
[8] This test was developed to ascertain whether the governmental entity has immunity from certain tort liabilities. A public official or governmental body performing a traditional legislative function is absolutely immune from liability for acts performed in that capacity. Additionally, government officials and entities performing discretionary functions generally are shielded from liability for civil damages, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have been aware. See Investment Mgmt. Services, Inc. v. Village of Folsom, 00-0832 (La.App. 1st Cir.5/11/01), 808 So.2d 597, 608.
[9] Having reached this decision, we pretermit discussion of the other issues raised by the parties to this appeal, as those issues are now moot.