# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CW 04-70


MARGONE, L.L.C.

VERSUS

ADDISON RESOURCES, INC., ET AL.


**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NUMBER 02-4796
HONORABLE AARON FRANK MCGEE, DISTRICT JUDGE

**********

## BILLIE COLOMBARO WOODARD
## JUDGE

**********

Court composed of Chief Judge Ulysses G. Thibodeaux, Billie Colombaro Woodard, and Oswald A. Decuir, Judges.

## WRIT GRANTED IN PART, DENIED IN PART AND REMANDED.

Guy Earl Wall
Paul Edward Bullington
Jonathan Robert Cook
2030 Dickory Avenue, #200
New Orleans, Louisiana 70123
(504) 736-0347
COUNSEL FOR
DEFENDANT/APPLICANT:
    Bass Enterprises Production
    Co.

Paula M. Wellons
James Melville Taylor
Charles J. Duhe, Jr.
Daren Sarphie
Taylor, Wellons, Politz & Duhe
1515 Poydras Street, #1900
New Orleans, Louisiana 70112
(504) 525-9888
COUNSEL FOR
PLAINTIFF/RESPONDENT:
    Margone, LLC

WOODARD, Judge.

Defendant, Bass Enterprises Production Co. (Bass), seeks supervisory writs regarding the trial court's denial of several exceptions. We grant the writ, in part, maintaining Bass' exception of no right of action in tort and contribution and dismiss those claims. However, we deny the writ regarding the exceptions of no right of action/prematurity and no cause of action under the Louisiana Environmental Quality Act.

* * * * *

This case centers around the clean-up of an allegedly hazardous waste site. The Plaintiff, Margone, is the current lessee of the waste site. Originally, Superior Oil Company and Pure Oil Company leased the premises and conducted operations which contributed to the current contamination. Later, they assigned the lease to MAR Services, which operated a commercial oilfield waste disposal facility on the premises for about a decade. In 1992, the Department of Natural Resources (DNR) revoked MAR's permit and ordered it to clean up the facility. However, MAR became insolvent and abandoned the site.

Accordingly, the Department of Natural Resources instructed companies that had deposited wastes at the site to form a steering committee and develop a plan to clean up the site. Eleven companies formed the steering committee, performed tests at the site, and projected the costs of a clean-up. The steering committee, also, elected ExxonMobil (successor to Superior) and Unocal (successor to Pure), the original lessees, to take the lead in evaluating the site and developing a clean-up plan. In 1998, ExxonMobil and Unocal organized Margone for this purpose. Margone conducted an investigation and identified several additional companies that it believed had contributed waste to the site. However, many of these companies refused to voluntarily take part in the site's clean up.

In 1998, the DEQ approved the DNR as the lead agency to oversee the site's cleanup, while reserving the right to use its own enforcement powers if necessary. Margone partially cleaned up the site. However, in 2001 the DNR's Office of Conservation (OC) issued Margone a compliance order to complete the clean up. Consequently, Margone sued several Defendants, alleging that each is partially

1

responsible for the hazardous waste deposited at the site and, consequently, is partially responsible for the cost of cleaning it up. Specifically, Margone brought causes of action in tort, contribution, and under the Hazardous Waste Control Law (HWCL),a part of the Louisiana Environmental Quality Act (LEQA).

Some of the Defendants filed various exceptions which the trial court denied. Bass filed exceptions of no cause of action, no right of action, prescription, and prematurity, all of which the trial court denied. Bass is the only defendant to apply to this court for supervisory writs, urging us to overturn the trial court's rulings. Thus, the only issues before us concern the trial court's denial of Bass' exceptions.

*****

HAZARDOUS WASTE CONTROL LAW

The legislature enacted the Hazardous Waste Control Law (HWCL) to identify sites at which hazardous substances may have been disposed or discharged and to provide a way for the Department of Environmental Quality (DEQ) to insure that those who contributed to the discharge or disposal are responsible for the costs of cleaning up the site.[1] Specifically, the legislature has found that:

Hazardous chemicals and substances have been disposed of in Louisiana for many years in a manner that, although possibly legal at the time, was careless and inappropriate and created conditions which are extremely dangerous and may cause long-term health and environmental problems for the people of this state.

Hazardous substances are produced and transported on a regular basis around this state and there have been numerous recent discharges resulting from accidents which have caused extensive damage to the citizens of the state and have caused the state to expend large sums to respond to these incidents.

Those persons generating these substances knew or were in a position to know of the hazardous and dangerous nature of the substances which they were producing and knew or should have known that improper disposal could have long-term health risks and could cause irreversible environmental damage.

_____

[1]La.R.S. 30:2271(B).

2

The state cannot and should not bear the costs associated with a private profit making venture.[2]

Accordingly, the HWCL targets past and present owners, operators, or lessees of pollution sources or facilities; any one who transported or contracted to transport hazardous waste to the source or facility; any one who generated the hazardous waste that eventually ended up at the source or facility; and any other person who disposed of hazardous substances at such source or facility.[3] The hazardous waste site and surrounding area is a "pollution source," and a "facility" includes a pollution source or any public or private property or facility where an activity is conducted which is required to be regulated under the LEQA and which does or can generate, transport, treat, store, or dispose of hazardous wastes.[4]

After the Secretary of the Department of Environmental Quality (DEQ) identifies a hazardous waste site that may present an imminent and substantial endangerment to health or to the environment, s/he shall demand that the responsible parties, either, participate in, or pay the costs of participating in, the site's clean-up. The Secretary must approve the clean- up, also called the "remediation" plan.[5]

Alternatively, if a person voluntarily cleans up a hazardous waste site before the Secretary demands remediation, that person may sue other alleged responsible parties for remediation costs, as long as the Secretary approved his remediation plan.[6] It is this alternative that Margone seeks to invoke against Bass and the other Defendants.

*No Cause of Action*

"The limited function of an exception of no cause of action is to determine whether the law provides a remedy to anyone assuming that the facts plead in the

---

[2]La.R.S. 30:2271(A).

[3]La.R.S. 30:2273.

[4]La.R.S. 30:2004(13) & (14).

[5]La.R.S. 30:2275(A).

[6]La.R.S. 30:2276(G)(3).

petition will be proven at trial."[7] In making this determination, we must resolve all doubts in Margone's favor.[8]

Margone claims that it has voluntarily completed a partial remediation of a hazardous waste site it currently leases in St. Landry Parish; consequently, it is entitled to sue other alleged responsible parties, including Bass, for remediation costs. Louisiana Revised Statute 30:2276(G)(3) provides the statutory predicate for Margone's cause of action.

To state a cause of action under La.R.S. 2276(G)(3), a plaintiff must allege that (1) he has incurred remedial costs in responding to a discharge or disposal of hazardous substances, albeit, without an initial demand by the Secretary; (2) the remediated site constitutes a "pollution source" or "facility," which poses an imminent and substantial endangerment to health or to the environment;[9] (3) he conducted such remediation in accordance with a plan that the Secretary approved;[10] and (4) the defendant, either, generated, transported, disposed, discharged, contracted with another to dispose or discharge, or owned or operated the site at any time subsequent to the disposal.[11] A plaintiff is not required to show that the defendant knew of any improper disposal of the hazardous substance, that the defendant's conduct was illegal at the time of disposal or discharge, or that the defendant was negligent.[12] Rather, the HWCL imposes strict liability.

According to Margone's petition, it currently leases a tract of land that is contaminated with hazardous wastes and qualifies as a pollution source or facility which threatens health and/or the environment; it has incurred substantial costs in partially remediating the site in accordance with a secretary-approved plan; and Bass either generated, transported, disposed of, discharged, or contracted with another to transport or dispose of hazardous wastes on the leased premises. Assuming these allegations are true, as we must, Margone states a cause of action against Bass under

---

[7]*Farmco, Inc., v. West Baton Rouge Parish Governing Council*, 01-1086 (La. 6/15/01), 789 So.2d 568.

[8]*Id.*

[9]La.R.S. 30:2274(A).

[10]La.R.S. 30:2276(G)(3).

[11]La.R.S. 30:2276(A).

[12]La.R.S. 30:2276(B).

the HWCL. To prevail on its claim, Margone need not prove that Bass's action was illegal at the time of disposal, Bass was negligent, or that it knew of any improper disposal of the hazardous substances.[13]

Concerning the requirement that the Secretary approve the plan, Margone's supplemental and amending petition states:

> Because the DEQ approved the OC as lead agency to enforce the clean up of the leased premises, the remediation plan pursuant to Statewide Ordinance 29-B, approved by the OC, qualifies as a secretary-approved plan pursuant to La.R.S. 30:2276(G)(1).

Bass argues that approval by OC is not equivalent to approval by the DEQ secretary. However, this argument addresses the merits of claim. In other words, Bass argues that Margone will not be able to prove this allegation. The extent of power DEQ's delegation granted to the OC is a question of fact. Thus, whether the OC could and did act as DEQ's agent in approving the plan is also a question of fact. However, for the purpose of this exception, we must accept Margone's allegation as true.

We note that the above provision in Margone's petition erroneously cites La.R.S. 30:2276(G)(1) instead of (G)(3). However, in other parts of the petition, Margone alleges damages for "Louisiana Environmental Qaulity Act, La.R.S. 30:2001, *et seq*., more specifically, La.R.S. 30:2276(G). Furthermore, it has pleaded facts sufficient to state a cause of action under La.R.S. 30:2276(G)(3).

Thus, Margone has stated a cause of action against Bass under the HWCL, and the trial court correctly denied Bass's exception.

*Prematurity*

An exception of prematurity raises the issue of whether a judicial cause of action has yet come into existence because some prerequisite condition has not been fulfilled.[14] La.R.S. 30:2276(G)(3) requires Margone to "make written demand on the defendant by certified mail, return receipt requested, at least sixty days prior to initiation of suit." Bass argues that Margone's suit is premature because it did not

---

[13]La.R.S. 30:2276(B).

[14]*Bridges v. Smith*, 01-2166 (La.App. 1 Cir. 9/27/02), 832 So.2d 307, 310, *writ denied*, 02-2951 (La. 2/14/03), 836 So.2d 121.

comply with this provision. Margone admits that it did not comply with the formalities of the statute but urges that Bass waived these formalities because it had actual knowledge of its alleged liability for years and refused to participate.

At the hearing on the exceptions, Bass disputed that Margone had ever given it the option to pay its estimated pro rata share versus a cash-out amount, as it had offered some of the other Defendants. In this respect, we think it significant to compare the demand requirements of La.R.S. 30:2276(G)(1) and (G)(3). In contrast to the general "written demand" language of (G)(3), (G)(1) requires "written demand . . . *requesting payment of that portion the nonparticipating party would be liable for if he participated*." The italicized language is absent from (G)(3), yet (G)(3) has the added requirements of certified mail and return receipt.

There is a logical explanation for these distinctions. Under (G)(1), the Secretary has already found the defendant to be a liable party and s/he has failed to comply or respond to the demand. Under (G)(3) the agency or a court has not yet adjudicated the defendant to be a liable party. Furthermore, a defendant sued under (G)(1) is liable for twice, and possibly even three times, his/her portion of the remedial costs. (G)(3) contains no such provisions, again, because the defendant has not yet been adjudicated a liable party at the time of the plaintiff's demand. Thus, (G)(1)'s added requirements ensure specificity of the demand because failure to comply results in double damages, while (G)(3)'s added requirements are directed at ensuring proof that the defendant has been given notice of the demand prior to suit, so that s/he has an opportunity to voluntarily participate and avoid court.

Margone introduced records revealing that a Bass representative attended at least two of the meetings concerning the site's clean-up. Because we find that Bass had actual knowledge that it was an alleged liable party, we agree with the trial court that Bass' exception of prematurity must be overruled.

Thus, Margone has a right and cause of action against Bass under the HWCL. Notwithstanding the HWCL's imposition of strict liability, Margone does allege Bass's negligence. Thus, we turn to its tort claim against Bass.

**TORT CLAIM**

We use the duty-risk analysis to determine whether the law permits a person to recover for a tort.[15] This analysis involves questions of duty, breach of duty, scope of duty, causation, and injury. Margone alleges that Bass is liable to it in tort for "negligent and/or intentional failure to conduct reasonable inspection and to do what they should have done," "negligent and/or intentional failure to warn," and "knowingly and intentionally deliver[ing] wastes composed of hazardous and toxic materials to the MAR facility for disposal."

We agree that Bass had a duty to exercise extraordinary care in handling the hazardous and toxic materials. In fact, from 1984 to 1996, our Civil Code permitted punitive damages if wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances caused a plaintiff injuries.[16] Moreover, it has long been established in our law that a plaintiff may bring a negligence action against one who fails to exercise extraordinary care when handling an inherently dangerous substance.[17]

However, Bass asserts that Margone is not the proper party to obtain the remedy for Bass' alleged breach because it did not own or lease the property at the time of Bass' disposal. In other words, Margone has no right of action against Bass.

*No Right of Action*

"An exception of no right of action has the function of determining whether the plaintiff has any interest in the judicially enforced right asserted."[18] "Under the jurisprudence the landowner at the time of the alleged damages is the person with the real and actual interest to assert the claim for damages to the land."[19] While jurisprudence has expanded the remedy to lessees as well as to landowners, the right

---

[15]*Bordelon v. St. Frances Cabrini Hosp.,* 93-1331 (La.App. 3 Cir. 5/4/94), 640 So.2d 476, *writ denied*, 94-1371 (La. 9/16/94), 642 So.2d 196.

[16]La.Civ.Code art. 2315.3 (repealed 1996).

[17]*Roberie v. Sinclair Refining Co.*, 252 So.2d 488 (La.App. 3 Cir. 1971).

[18]*Rowan v. Town of Arnaudville*, 02-882 (La.App. 3 Cir. 12/11/02), 832 So.2d 1185, 1188.

[19]*Dorvin Land Corp. v. Parish of Jefferson,* 469 So.2d 1011, 1013 (La.App. 5 Cir. 1985) (citations omitted).

of action still belongs to the lessee *at the time of the alleged damages*. Therefore, Margone has no right of action for property damages.

Nonetheless, Margone asserts that the "injury" it suffered from Bass' breach of duty is the OC's compliance order, rather than the injury to the property. We cannot agree. As Margone points out, until the duty imposed by the OC's compliance order, its only obligation was to the current landowners which obligation would not come due until 2009, at the expiration of the lease. Certainly, if the lease imposed on Margone an obligation to restore the property at the lease's termination, we would not find that such an obligation constituted damage resulting from Bass' tortious conduct.[20] Rather, it would constitute a contractual obligation. Similarly, the OC's order creates an obligation.[21] Margone asserts no contractual privity with Bass nor have any of the leases been introduced into the record. Thus, we find Margone has no right of action against Bass independent of the action that arises from LEQA.

Our conclusion pretermits a determination of whether Margone states a cause of action in tort and whether such a claim is prescribed.

*Contribution*

Louisiana Civil Code Article 1804 provides, in pertinent part:

> Among solidary obligors, each is liable for his virile portion. If the obligation arises from a contract or quasi-contract, virile portions are equal in the absence of agreement or judgment to the contrary. If the obligation arises from an offense or quasi-offense, a virile portion is proportionate to the fault of each obligor.
>
> A solidary obligor who has rendered the whole performance, though subrogated to the right of the obligee, may claim from the other obligors no more than the virile portion of each.

We have already determined that Bass has no obligation in contract or tort. Thus, Margone may not seek contribution under Article 1804. Its only viable claim is under LEQA, which provides for contribution within its own statutory scheme.

---

[20]*See Corbello v. Iowa Production*, 02-826 (La. 2/25/03), 850 So.2d 686.

[21]*See e.g.,* La.R.S. 30:89.1.

**CONCLUSION**

We grant Bass' writ in part, overturning the trial court's denial of its exceptions of no right of action in tort and contribution, independent of any rights Margone has to contribution under LEQA. We deny Bass' writ on the exceptions of no cause of action and no right of action/prematurity concerning the LEQA claim. The trial court correctly denied these exceptions. Costs of this appeal shall be shared equally by Bass and Margone.

**WRIT GRANTED IN PART, DENIED IN PART, AND REMANDED.**