STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2019 CA 0308

FIRESTONE POLYMERS, L.L.C., BRIDGESTONE AMERICAS TIRE
OPERATIONS, L.L.C., AND BRIDGESTONE AMERICAS, INC.

VERSUS

THE LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY, CITGO
PETROLEUM CORPORATION, OCCIDENTAL CHEMICAL CORPORATION
AND OXY USA, INC.

JUDGMENT RENDERED: **MAY 2 8 2020**

* * * * * * *

Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge • State of Louisiana
Docket No. C664790 • Section 25

The Honorable Wilson E. Fields, Judge Presiding

* * * * * * *

| | |
|---|---|
| Anne Jordan Crochet<br>Timothy J. Poche<br>Baton Rouge, Louisiana | ATTORNEYS FOR APPELLANTS<br>PLAINTIFFS—Firestone Polymers, L.L.C.,<br>Bridgestone Americas Tire Operations,<br>L.L.C., and Bridgestone Americas, Inc. |
| Perry M. Theriot<br>Amber Litchfield<br>Ted R. Briyles<br>Oscar Magee<br>Baton Rouge, Louisiana | ATTORNEYS FOR APPELLEE<br>DEFENDANT—The Louisiana Department<br>of Environmental Quality |
| Patrick B. Reagin<br>David W. Leefe<br>Louis E. Buatt<br>Charles B. Wilmore<br>Court C. VanTassell<br>New Orleans, Louisiana | ATTORNEYS FOR APPELLEES<br>DEFENDANTS—Citgo Petroleum<br>Corporation, Occidental Chemical<br>Corporation, and Oxy USA, Inc. |

* * * * * * *

BEFORE: WELCH, CRAIN,[1] AND HOLDRIDGE, JJ.

---

[1] Justice Will Crain is serving as judge *ad hoc* by special appointment of the Louisiana Supreme Court.

**WELCH, J.**

The plaintiffs, Firestone Polymers, L.L.C. ("Firestone") and Bridgestone Americas Tire Operations, L.L.C. ("BATO"),[2] and Bridgestone Americas, Inc. ("Bridgestone"), appeal a trial court judgment sustaining the dilatory exceptions raising the objections of prematurity filed by the defendants, Louisiana Department of Environmental Quality ("DEQ"), CITGO Petroleum Corporation ("CITGO"), and Occidental Chemical Corporation and Oxy USA, Inc. ("OXY") and dismissing Firestone, BATO, and Bridgestone's petition for declaratory judgment regarding an administrative order for remedial action issued by DEQ to Firestone, BATO, CITGO, and OXY. Because we find the issues raised in this proceeding are rendered moot by our recent decision in **Firestone Polymers, LLC and Bridgestone Americas Tire Operations, LLC v. The Louisiana Department of Environmental Quality, et al.**, 2019-0283 (La. App. 1st Cir. 11/15/19), __ So.3d __, writ denied, 2020-0131 (La. 3/9/20), ___ So.3d ___("**Firestone (I)**"), we dismiss this appeal.

## LEGAL BACKGROUND

Under the Louisiana Environmental Quality Act ("LEQA"), La. R.S. 30:2001, *et seq.*, DEQ is the primary agency in this state concerned with environmental protection and regulation. La. R.S. 30:2011(A)(1). The Secretary of DEQ has the power to issue such orders or determinations as may be necessary to effectuate the purpose of the LEQA.[3] La. R.S. 30:2011(D)(6). In Chapter 12 of the LEQA (*i.e.*, La. R.S. 30:2271-2290), which is entitled "Liability for Hazardous Substance Remedial Action," the legislature gave DEQ the power to identify

---

[2] BATO was formerly known as Bridgestone Firestone North American Tire, L.L.C., which was formerly known as Bridgestone/Firestone North American Tire, L.L.C. BATO is the successor by merger to Bridgestone/Firestone, Inc., which was formerly known as The Firestone Tire & Rubber Co.

[3] Under La. R.S. 30:2025, the Secretary of the DEQ also has the authority to institute "[a]ny civil action" necessary to carry out the provisions of the LEQA.

3

locations where past hazardous substance discharges may have occurred, to provide DEQ a mechanism to insure that the costs of remedial actions are borne by those who contributed to the discharge, and to allow DEQ to respond as quickly as possible to such discharges while retaining the right to institute legal actions against those responsible for remedial costs. See La. R.S. 30:2271(B); **Firestone (I)**, 2019-0283 at p.6, ___ So.3d at ___, citing **Margone, L.L.C. v. Addison Resources, Inc.**, 2004-70 (La. App. 3rd Cir. 12/15/04), 896 So.2d 113, 116-117, writ denied, 2005-0139 (La. 3/24/05), 896 So.2d 1039.

When the Secretary of DEQ determines that a hazardous substance discharge has occurred or is about to occur, which may present an imminent and substantial danger to health or the environment, he shall make a written demand on every responsible person who has participated in the discharge to undertake remedial actions at the site or to pay the Secretary of DEQ for remedial action costs. See La. R.S. 30:2275(A); **Firestone (I)**, 2019-0283 at p.6, ___ So.3d at ___, citing **Margone, L.L.C.**, 896 So.2d at 117. The order for remedial action shall prescribe a reasonable time for reply. If, after that time, the Secretary of DEQ receives no reply or a refusal to comply with the demand, he shall institute a suit in the district court of proper venue demanding that the defendants bear the remedial costs at the site, or asking the court to issue an order that the site be closed, or any other order necessary to abate, contain, or remove the hazard. La. R.S. 30:2275(B)(1).[4] An action filed under Chapter 12 of the LEQA must be commenced within ten years from the date of the discovery of the discharge for which remedial action must be undertaken, or three years from the date the Secretary of DEQ issues the remediation order, whichever comes later. La. R.S. 30:2276(H)(1). In response to the Secretary of DEQ's suit under Chapter 12 of

---

[4] If a person fails to respond to a demand to undertake remedial action, the Secretary of DEQ may take all actions authorized by the LEQA prior to filing suit for recovery. La. R.S. 30:2275(C).

LEQA, a defendant may assert defenses to liability for hazardous substance discharges, including the defenses set forth in La. R.S. 30:2277. **Firestone (I),** 2019-0283 at pp. 7-8 and 9, ___ So.3d at ___. In addition, under certain conditions, a person who has incurred remedial costs in responding to a discharge or disposal of a substance covered by Chapter 12, without the need for an initial demand by the Secretary of DEQ, may sue and recover remedial costs from any person found by a court to be liable provided such person makes written demand on the defendant prior to initiation of suit. See La. R.S. 30:2276(G).

Separate from DEQ's authority to issue remediation orders under Chapter 12 of the LEQA, DEQ can also take "enforcement actions" under Chapter 2-A of the LEQA (La. R.S. 30:2050.1-2050.31), which is entitled "Enforcement Procedure and Judicial Review." Chapter 2-A of the LEQA does not define the term "enforcement action," but enforcement actions include compliance orders, penalty assessments, permit suspensions, cease and desist orders, and settlements or compromises. See La. R.S. 30:2050.1(C), 30:2050.2, 30:2050.3, 30:2050.7, and 30:2050.8. Enforcement actions do not include remediation orders. See **Firestone (I),** 2019-0283 at pp.8-9, ___ So.3d at ___.[5] Furthermore, under Chapter 2-A of LEQA, a person having a real and actual interest in a matter may petition the Secretary of DEQ for a declaratory ruling. See La. R.S. 30:2050.10. An aggrieved person may appeal (or seek judicial review of) a final permit action, a final enforcement action, or a declaratory ruling to the 19th Judicial District Court under La. R.S. 30:2050.21. However, since there exists a specific procedure in Chapter 12 of LEQA to challenge a remediation order, the appellate provisions of Chapter 2-A of LEQA (*i.e.*, the provisions for judicial review of final enforcement actions,

---

[5] However, the failure to respond to a remediation order could result in an enforcement action. See La. R.S. 30:2275(C).

declaratory rulings, and final permit actions), do not apply to remediation orders. See **Firestone (I)**, 2019-0283 at pp.8-9, ___ So.3d at ___.

## FACTUAL AND PROCEDURAL BACKGROUND

Firestone is the current owner and operator of a synthetic rubber manufacturing facility located near Sulphur, Louisiana ("the Firestone facility"). BATO was the owner and operator of the Firestone facility from approximately 1955 through November 2001. The Firestone facility and industrial facilities owned and operated by CITGO and OXY are located on (or in the vicinity of) Bayou d'Inde and a ditch or channel and associated wetlands (the "common channel"); they each discharge water into the common channel and/or Bayou d'Inde.

In 2003, a United States Environmental Protection Agency contractor issued a report indicating that Bayou d'Inde was being impacted by hazardous releases. Although CITGO and OXY agreed to participate in remediation efforts, Firestone claimed that its discharge into Bayou d'Inde was minimal and refused to join a collective remediation venture. In a September 22, 2004 letter, DEQ demanded that BATO[6] participate in the remediation of Bayou d'Inde or pay the cost of the remedial action and that it reimburse DEQ for the costs it incurred. After discussions with DEQ, Firestone responded by denying liability for the contamination.

In a November 28, 2006 letter, DEQ again demanded that Firestone participate in the remediation of Bayou d'Inde and the common channel or pay the cost of remedial action. DEQ's 2006 demand was based on samplings taken in 2005 showing that polychlorinated biphenyls (PCBs) were present in the common channel. After discussions with DEQ, Firestone responded by denying liability for

---

[6] The 2004 DEQ demand was issued to Bridgestone/Firestone North America Tire, L.L.C. See footnote 2.

contamination of Bayou d'Inde or the common channel. Notably, both DEQ's 2004 and 2006 demands were made pursuant to Chapter 12 of the LEQA, *i.e.*, La. R.S. 30:2275. Further, there is no dispute that DEQ did not file suit under La. R.S. 30:2275(B) after its 2004 or 2006 demands for Firestone/BATO to participate in the remediation of Bayou d'Inde and the common channel.

Almost ten years later, in a July 14, 2016 letter, DEQ again demanded, pursuant to La. R.S. 30:2275, that Firestone, CITGO, and OXY participate in the remediation of Bayou d'Inde and the common channel or pay the cost of remediation. Firestone again denied liability. Thereafter, on November 29, 2017, DEQ issued an Administrative Order for Remedial Action ("Remediation Order") to Firestone, CITGO, and OXY addressing the "final investigation and remediation" of Bayou d'Inde and the common channel. The Remediation Order deemed Firestone, CITGO, and OXY to be responsible parties and contributing sources to the contamination in Bayou d'Inde and ordered them to participate in its remediation. Specifically, as to Firestone, whom DEQ noted was the only non-participating responsible party, the Remediation Order stated that "[t]o the extent that the discharge of PCBs from Firestone's facility has contributed to the contamination of Bayou d'Inde Area A, [Firestone] is ordered to participate in its remediation." The Remediation Order stated: that it was issued under the authority of La. R.S. 30:2001, *et seq.*, particularly La. R.S. 30:2011(D)(6) and (14), La. R.S. 30:2273, and 30:2275; that the Remediation Order "shall serve as an enforceable document"; that unauthorized noncompliance with the Remediation Order's terms "constitute[d] [a] violation of La. R.S. 30: Chapter 12"; and that such violation would be considered "grounds for enforcement actions, including, but not limited to, [c]ompliance [o]rders and [p]enalties." Thereafter, on December 22, 2017,

7

CITGO/OXY made written demand on Firestone, BATO, and Bridgestone[7] for remedial costs pursuant to La. R.S 30:2276(G).

In response to DEQ's Remediation Order, Firestone/BATO (as the current and former owners and operators of the Firestone facility), filed three separate actions in the 19th Judicial District Court: (1) a petition for declaratory judgment, (the instant proceeding, which is the subject of this appeal and discussed hereinafter);[8] (2) a petition seeking judicial review of the Remediation Order under LEQA and/or the Louisiana Administrative Procedure Act ("LAPA"), La. R.S. 49:950, *et seq.* (the proceedings in **Firestone (I)**, which are also discussed hereinafter)[9]; and (3) a petition for *de novo* review under the LEQA, which Firestone/BATO filed after DEQ denied its request for an administrative hearing to address the Remediation Order.[10]

In the instant petition for declaratory judgment, Firestone, BATO, and Bridgestone sought a declaration that the Remediation Order was issued in violation of and was barred, prescribed, and/or prohibited under La. R.S. 30:2276(H)[11] because the disposal or discharge for which remedial action was demanded was discovered more than ten years prior to the Remediation Order and CITGO/OXY's La. R.S. 30:2276(G) demand. Thus, they contend DEQ, CITGO,

---

[7] Bridgestone alleged it never owned or operated the Firestone facility, but it alleged that CITGO/OXY's demand for payment of a portion of their remediation costs was directed to it.

[8] Bridgestone is plaintiff in the instant action, but was not a party to **Firestone (I)**.

[9] Firestone/BATO filed a supervisory writ application seeking a stay of the Remediation Order during the pendency of the appeal in **Firestone (I)**, which this court denied. See **Firestone Polymers, LLC and Bridgestone Americas Tire Operations, LLC v. The Louisiana Department of Environmental Quality**, 2018-1791 (La. App. 1st Cir. 2/11/19)(*unpublished writ action*).

[10] Neither the record nor the appellate briefs herein disclose the status of Firestone/BATO's petition for *de novo* review.

[11] As previously set forth, La. R.S. 30:2276(H)(1) provides that no action shall be commenced under Chapter 12 of LEQA unless it is commenced within ten years from the date of the discovery of the disposal or discharge for which remedial action must be undertaken or three years from the date that the Secretary of DEQ issues an order requiring remedial action be undertaken, whichever comes later.

and OXY should be barred from instituting any action against Firestone, BATO, and Bridgestone to enforce potential obligations and responsibilities under La. R.S. 30:2275 for matters that were the subject of the Remediation Order. Alternatively, Firestone, BATO, and Bridgestone sought a declaration that DEQ was prohibited from issuing and enforcing the Remediation Order as a means to enforce potential obligations and responsibilities under La. R.S. 30:2271, *et seq.* and could only do so through the procedures set forth in La. R.S. 30:2275, and that the Remediation Order was made by DEQ in excess of its statutory authority. And, in the further alternative, Firestone, BATO, and Bridgestone sought a declaration that the Remediation Order violated Firestone, BATO, and Bridgestone's constitutional right to due process because it was issued without notice and an opportunity for a hearing.

In response to the petition for declaratory judgment, CITGO/OXY filed a dilatory exception raising the objection of prematurity and a peremptory exception raising the objection of no right of action. Therein, CITGO/OXY maintained that Firestone, BATO, and Bridgestone had no right to declaratory relief relating to the Remediation Order because LAPA and LEQA, *i.e.*, Chapter 2-A, provided a procedure for both declaratory relief and judicial review of an agency action to the exclusion of La. C.C.P. arts. 1871 and 1872[12] and Firestone, BATO, and

---

[12] Louisiana Code of Civil Procedure article 1871 provides:

> Courts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for; and the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The declaration shall have the force and effect of a final judgment or decree.

In addition, La. C.C.P. art. 1872 provides:

> A person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute,

Bridgestone had failed to exhaust those administrative remedies.[13]  In addition, CITGO/OXY maintained that Firestone, BATO, and Bridgestone had no valid constitutional claim or claim of *ultra vires* action by DEQ because the Remediation Order itself neither infringed on constitutional rights nor constituted an *ultra vires* act because it was issued pursuant to DEQ's statutory authority, *i.e.*, La. R.S. 30:2011(D)(5), and it was neither a compliance order nor a penalty assessment.  In addition, DEQ filed a dilatory exception raising the objection of prematurity, maintaining that Firestone, BATO, and Bridgestone's action was premature because DEQ had not filed an action to enforce the Remediation Order pursuant to La. R.S. 30:2275.

Firestone, BATO, and Bridgestone opposed the exceptions, and after a hearing, the trial court sustained the objections of prematurity on the basis that: (1) Firestone, BATO, and Bridgestone were required to obtain a declaratory ruling exclusively from DEQ and/or were required to first obtain a declaratory ruling from DEQ before seeking a judicial declaration, and (2) there was no justiciable controversy.  On December 3, 2018, the trial court signed a judgment that sustained the objections of prematurity filed by DEQ and CITGO/OXY and dismissed Firestone, BATO, and Bridgestone's petition for declaratory judgment, and it is from this judgment that Firestone, BATO, and Bridgestone have appealed. While this appeal was pending, in April 2019, DEQ filed suit under La. R.S. 30:2275(B) in the Fourteenth Judicial District Court for the Parish of Calcasieu, pursuant to its July 2016 demand and the Remediation Order (the "14[th] JDC suit"). See **Firestone (I)**, 2019-0283 at p.8 n.8.

---

ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

[13] But c.f. **Firestone (I)**, 2019-0283 at p.4 and pp.8-9 (wherein CITGO/OXY argued that the Remediation Order was merely an administrative preliminary step and did not constitute a LEQA final enforcement action nor a LAPA final decision order that was subject to judicial review, as well as this Court's determination that the Remediation Order was not appealable under or otherwise subject to the enforcement and judicial review provisions of Chapter 2-A of LEQA.

10

## JURISDICTION AND MOOTNESS

An appellate court has a duty to examine subject matter jurisdiction *sua sponte,* even when the issue is not raised by the litigants. **Swanson v. Department of Public Safety and Corrections,** 2001-1066 (La. App. 1st Cir. 6/21/02), 837 So.2d 634, 636. A court's subject matter jurisdiction cannot be waived or conferred by consent of the parties. **Williams v. International Offshore Services, L.L.C.,** 2011-1240, 2011-1318, 2011-1369 (La. App. 1st Cir. 12/7/12), 106 So.3d 212, 217, writ denied, 2013-0259 (La. 3/8/13), 109 So.3d 367.

It is well settled that courts will not decide abstract, hypothetical, or moot controversies, or render advisory opinions with respect to controversies. **Joseph v. Ratcliff,** 2010-1342 (La. App. 1st Cir. 3/25/11), 63 So.3d 220, 225. Cases submitted for adjudication must be justiciable, ripe for decision, and not brought prematurely. A "justiciable controversy" is one presenting an existing actual and substantial dispute involving the legal relations of parties who have real adverse interests and upon whom the judgment of the court may effectively operate through a decree of conclusive character. A "justiciable controversy" is thus distinguished from one that is hypothetical or abstract, academic, or moot. **City of Hammond v. Parish of Tangipahoa,** 2007-0574 (La. App. 1st Cir. 3/26/08), 985 So.2d 171, 178.

An issue is moot when a judgment or decree on that issue has been "deprived of practical significance" or "made abstract or purely academic." Thus, a case is moot when a rendered judgment or decree can serve no useful purpose and give no practical relief or effect. **City of Hammond,** 985 So.2d at 178. If the case is moot, there is no subject matter on which the judgment of the court can operate. **Joseph,** 63 So.3d at 225. Thus, jurisdiction, once established, may abate if the case becomes moot, as the controversy must normally exist at every stage of the proceeding, including appellate stages. **City of Hammond,** 985 So.2d at 178,

citing **Cat's Meow, Inc. v. City of New Orleans, Department of Finance**, 98-0601 (La. 10/20/98), 720 So.2d 1186, 1193. In other words, even though the requirements of justiciability are satisfied when the suit is initially filed, when the fulfillment of these requirements lapses at some point during the course of litigation before the moment of final disposition, mootness occurs. In such a case, there may no longer be an actual controversy for the court to address, and any judicial pronouncement on the matter would be an impermissible advisory opinion. See **City of Hammond**, 985 So.2d at 178, citing **Cat's Meow, Inc.**, 720 So.2d at 1193-1194.

A court must refuse to entertain an action for a declaration of rights if the issue presented is academic, theoretical, or based on a contingency that may or may not arise. **American Waste & Pollution Control Company v. St. Martin Parish Police Jury**, 627 So.2d 158, 162 (La. 1993). Nor is a court required to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law that cannot affect the result as to the thing in issue in the case before it. **Council of City of New Orleans v. Sewerage and Water Board of New Orleans**, 2006-1989 (La. 4/11/07), 953 So.2d 798, 802 (*per curiam*).

As previously set forth, in the petition for declaratory judgment, Firestone, BATO, and Bridgestone sought a declaration that the Remediation Order was issued in violation of and was barred, prescribed, and/or prohibited under La. R.S. 30:2276(H),[14] because the disposal or discharge for which remedial action was demanded was discovered more than ten years prior to the Remediation Order and CITGO/OXY's La. R.S. 30:2276(G) demand. Thus, they contended DEQ, CITGO, and OXY should be barred from instituting any action against Firestone, BATO, and Bridgestone to enforce potential obligations and responsibilities under

---

[14] See footnote 11.

12

La. R.S. 30:2275 for matters that were the subject of the Remediation Order. In the alternative, Firestone, BATO, and Bridgestone sought a declaration that DEQ was prohibited from issuing and enforcing the Remediation Order as a means to enforce potential obligations and responsibilities under La. R.S. 30:2271, *et seq.* and could only do so through the procedures set forth in La. R.S. 30:2275 and that the Remediation Order was made by DEQ in excess of its statutory authority. And in the further alternative, Firestone, BATO, and Bridgestone sought a declaration that the Remediation Order violated Firestone, BATO, Bridgestone's constitutional right to due process because it was issued without notice and an opportunity for a hearing.

In **Firestone (I)**, this Court addressed Firestone/BATO's petition seeking judicial review of the Remediation Order under LEQA and/or LAPA. Therein, in response to the petition, both DEQ and CITGO/OXY filed declinatory exceptions raising the objection of lack of subject matter jurisdiction, claiming that the Remediation Order was merely an administrative "preliminary step" and did not constitute a LEQA final enforcement action or a LAPA final decision or order. The trial court sustained the objections and on appeal, this Court held that the trial court correctly determined that it lacked subject matter jurisdiction. In doing so, this Court found that:

> ...the specific statutory procedure provided in [Chapter 12 of LEQA] implies a legislative intent that the suit filed under La. R.S. 30:2275[(B)] is the appropriate means by which Firestone/BATO is to challenge the DEQ Remediation Order. Thus, although the DEQ Remediation Order states that it is "an enforceable document," its terms are indeed *not* enforceable against Firestone/BATO until after DEQ files the suit required in La. R.S. 30:2275[(B)], and that suit has been tried. Further, despite the Remediation Order's extensive "Findings of Fact" and ominous statement that unauthorized non-compliance with its terms would constitute a violation of [Chapter 12 of LEQA], none of DEQ's characterizations or factual assertions are binding on Firestone/BATO nor are they due deference by the district court at the trial held under La. R.S. 30:2276.

Rather, in the La. R.S. 30:2276 trial, as an exercise of its

original jurisdiction, the district court will be the tribunal where the initial adjudication is made regarding: (1) whether Firestone/BATO is liable to the State for remedial action (La. R.S. 30:2276[(A)]); and, only if so, (2) the proportionate contribution of remedial costs and/or penalties for which Firestone/BATO is liable based on evidence presented to the court (La. R.S. 30:2276[(C)] through 30:2276[(F)]). Before the district court can decide these factual matters, DEQ will have the opportunity to present evidence that Firestone/BATO is liable under La. R.S. 30:2276, and Firestone/BATO will have the opportunity to present defenses to the suit as provided in La. R.S. 30:2277.

\* \* \*

[As to Firestone/BATO's claim that the Remediation Order deprives Firestone/BATO of constitutionally protected property interests], ...[a]s discussed above, the DEQ Remediation Order is not binding on Firestone/BATO, because the district court has not made a determination under La. R.S. 30:2276 that Firestone/BATO is liable for remediation costs. Thus, the non-binding DEQ Remediation Order cannot deprive Firestone/BATO of any constitutionally protected property interest ....

**Firestone (I)**, 2019-0283 at p.8, ___ So.3d at ___ (footnote omitted).

In this action, regardless of the propriety of the trial court's ruling sustaining the objection of prematurity, given this Court's pronouncements in **Firestone (I)**, we find the petition for declaratory judgment is moot because the relief requested by Firestone, BATO, and Bridgestone was either addressed in **Firestone (I)** or a judgment in these proceedings would have no practical relief or effect for the parties, and thus, would be an impermissible advisory opinion. More specifically, as to Firestone, BATO, Bridgestone's request for a declaration that the Remediation Order was barred, prescribed, and/or prohibited because the disposal or discharge for which remedial action was demanded was discovered more than ten years prior to the Remediation Order and CITGO/OXY's demand, we find this raises the issue or the defense of prescription to a suit brought under La. R.S. 30:2275(B). See La. R.S. 30:2276(H)(1). As this Court stated in **Firestone (I)**, 2019-0283 at p.9, ___ So.3d at ___, the trial court presiding over the La. R.S. 30:2276 suit, *i.e,.* the Fourteenth Judicial District Court suit, will be the tribunal

14

where initial adjudications will be made regarding liability, including any defenses to the suit which Firestone, BATO, and Bridgestone will have. Any defense to the suit would include the defense of prescription. Thus, we find that any declaration or judgment in these proceedings as to the issue or defense of prescription would have no practical effect, because the trial court in the Fourteenth Judicial District Court suit is entitled to adjudicate that issue anew and a judgment in these proceedings would not be owed any deference, be binding, or constitute law of the case.

Next, insofar as Firestone, BATO, and Bridgestone sought, in the alternative, a declaration that DEQ was prohibited from issuing and enforcing the Remediation Order, that it could only do so through the procedures set forth in La. R.S. 30:2275, and that the Remediation Order was made by DEQ in excess of its statutory authority, this Court specifically held in **Firestone (I)** that the Remediation Order was not enforceable against Firestone/BATO until after DEQ has filed the suit required by La. R.S. 30:2275(B) and was successful in the trial of that suit. **Firestone (I)**, 2019-0283 at p.9, ___ So.3d at ___. Lastly, to the extent Firestone, BATO, and Bridgestone sought a declaration that the Remediation Order violated Firestone, BATO, and Bridgestone's constitutional right to due process because it was issued without notice and an opportunity for a hearing, in **Firestone (I)**, 2019-0283 at p.9, this Court determined that the non-binding Remediation Order could not deprive Firestone/BATO of any constitutionally protected interest because there had been no determination that Firestone/BATO was liable for remediation costs. Accordingly, we find the issues raised in this proceeding are moot. Therefore, we dismiss this appeal for lack of jurisdiction.

## CONCLUSION

For all of the above and foregoing reasons, the appeal of the December 3, 2018 judgment of the trial court sustaining the dilatory exceptions raising the

objection of prematurity and dismissing the petition for declaratory judgment filed by Firestone Polymers, L.L.C., Bridgestone Americas Tire Operations, L.L.C., and Bridgestone Americas, Inc., is dismissed as moot.

All costs of this appeal in the amount of $1,686.50 are assessed equally between the defendants, Louisiana Department of Environmental Quality, CITGO Petroleum Corporation, Occidental Chemical Corporation, and Oxy USA, Inc.

**APPEAL DISMISSED AS MOOT.**

16