# STATE OF LOUISIANA
# COURT OF APPEAL
# FIRST CIRCUIT

## 2021 CA 1224

LINDA SUE CHAUVIN WEBSTER, INDIVIDUALLY AND ON BEHALF OF
THE SUCCESSION OF JOSEPH CAMERON WEBSTER

VERSUS

DAVID H. WEBSTER AND TWIN BROTHERS MARINE, L.L.C.

Judgment rendered: **JUL 0 8 2022**

* * * * *

On Appeal from the
Sixteenth Judicial District Court
In and for the Parish of St. Mary
State of Louisiana
No. 135,301

The Honorable Anthony Saleme, Jr., Judge Presiding

* * * * *

| | |
|---|---|
| Justin Burton Schmidt<br>New Orleans, Louisiana | Attorneys for Defendant/Appellant<br>David H. Webster |
| Kyle M. Bacon<br>Lafayette, Louisiana<br>and<br>Andrew R. Lee<br>John R. Guenard<br>P.J. Kee<br>New Orleans, Louisiana | Attorneys for Plaintiffs/Appellees<br>Linda Sue Chauvin Webster,<br>individually and in her capacity as the<br>duly confirmed independent Executor<br>of the Succession of Joseph Cameron<br>Webster |
| Gerard J. Bourgeois<br>William E. Bourgeois<br>Morgan City, Louisiana | Attorneys for Defendant/Appellee<br>Twin Brothers Marine, L.L.C. |

* * * * *

**BEFORE: GUIDRY, HOLDRIDGE, AND CHUTZ, JJ.**

WRC by CH Concurs with the result

**HOLDRIDGE, J.**

This appeal follows the death of Joseph Cameron Webster (Cameron), one of two manager members of Twin Brothers Marine, L.L.C. (TBM). Petitioners, the decedent's wife, Linda Sue Chauvin Webster, in her individual capacity and in her capacity as succession representative; and two trusts, the Robert Webster Trust (RW Trust) and the Darrell Webster Trust (DW Trust), in their capacity as members of TBM, filed suit against TBM and the remaining manager member, the decedent's surviving twin brother, David H. Webster. The petition sought, amongst other relief, to have Cameron's estate recognized as a member of TBM with full member rights, including the right to vote. The district court granted relief to petitioners, and defendants have appealed. Since then, however, petitioners have filed a motion to dismiss this appeal as moot, claiming certain post-judgment events have affected TBM's operations and any relief granted in this appeal would have no practical effect. While defendants have not expressly conceded mootness, they have not filed any opposition to the motion to dismiss or challenged the alleged facts supporting the motion. Due to the current posture of this case, we set aside the district court's ruling and remand this matter for the district court to determine, after a contradictory hearing, whether the case has become moot.

## FACTUAL AND PROCEDURAL BACKGROUND

TBM is a privately-held limited liability company that was formed and managed by Cameron and David.[1] On March 29, 2000, the then-members[2] of TBM

---

[1] The formation and operation of limited liability companies in Louisiana is governed by La. R.S. 12:1301, *et seq.* A limited liability company may conduct business for any lawful purpose. La. R.S. 12:1302. A limited liability company is authorized to conduct business until its dissolution. See La. R.S. 12:1334.

[2] At that time, other than Cameron and David, there were two other members of TBM that owned a small portion of membership units, Houston A. Marshall and Farrell M. Luke. Houston and Farrell divested themselves of their interests in TBM years before Cameron's death.

2

executed its original organizational documents, the Articles of Organization and an Operating Agreement, naming Cameron and David, the majority owners of TBM, as co-managers. Three months later, Cameron and David donated a portion of their respective ownership interests by donating membership units (units) to separate trusts for each of their children, thereby admitting these new members to TBM: the RW Trust, the DW Trust, the Jason Webster Trust (the JW Trust), the Paul Webster Trust (the PW Trust), and the Melynda Webster Leleux Trust (the MWL Trust). Robert and Darrell Webster are the sons of Cameron and Linda Sue, and Jason, Paul and Melynda are David's children. Cameron transferred 11.175 units to each of his children's trusts, and David transferred 7.45 units to each of his children's trusts. Thus, 22.35 units were transferred *per stirpes* to the family trusts, keeping the amount of unit ownerships even between each brother's respective family members.

After these transfers, David and Cameron each held 175.65 units in TBM. Thereafter, from 2002 through 2009, several members sold a portion of their units back to TBM, reducing the number of outstanding units. It is undisputed that David sold various small portions of his units back to TBM over the years prior to Cameron's death in November 2018.

From the creation of TBM until Cameron's death, Cameron and David served as co-managers. The Articles of Organization established a manager-managed company that provided broad powers to both Cameron and David. According to the district court testimony of Linda Sue Chauvin Webster, her husband, Cameron worked at TBM's fabrication yard daily. He managed the yard, and he was physically on TBM's premises every day for forty-nine to fifty years. Cameron's son, Darrell, testified that David initially worked at the fabrication yard, but then later moved to a satellite sales office; David spoke to Cameron daily about business functions, but he was not directly involved in the daily operations of the fabrication

3

yard for the last twenty years prior to Cameron's death. Darrell worked with Cameron, as a company employee, for approximately twenty-seven years. Darrell continued to work for TBM, in his then capacity as general manager of the fabrication yard, after his father's death.

As of the time of Cameron's death in November 2018, TBM had seven members, the two Webster brothers and the five trusts. It is undisputed that at this time, unit ownership was as follows:

|  | Membership Units | Ownership % |
| --- | --- | --- |
| J. Cameron Webster | 175.65 | 48.47924% |
| David H. Webster | 145.96 | 40.2848% |
| RW Trust | 11.18 | 3.0857% |
| Darrell Webster Trust | 11.18 | 3.0857% |
| JW Trust | 7.45 | 2.0562% |
| PW Trust | 5.45 | 1.5042% |
| MWL Trust | 5.45 | 1.5042% |

The parties do not dispute that Cameron died testate, and Linda Sue was duly confirmed as the independent executor of the Succession of J. Cameron Webster in the proceeding captioned **Succession of Joseph Cameron Webster**, 16th Judicial District Court, Docket No. 21118 (the Succession Proceeding). When the district court signed the judgment from which defendants have appealed, the Succession Proceeding was pending, and the property comprising Cameron's estate had not been distributed. Under the terms of TBM's original organizational documents, David was to continue as manager of TBM after Cameron's death. At some point, conflict developed between David and Linda Sue and, likewise, between David and Darrell. Ultimately, David informed Darrell that he was going to bring in his son, Jason, to take over Darrell's position. In response, Darrell told David, "I quit." He explained that his "ability to perform [his] job duties was taken away from [him]."

4

On September 4, 2020, David unilaterally amended TBM's Articles of Organization, providing major amendments to most of its provisions, particularly regarding management and member voting.[3] In November 2020, Linda Sue, individually and as independent executor of the Succession, and the RW and DW Trusts sought: 1) a writ of mandamus ordering David and TBM to: a) recognize Cameron's Estate as a member of TBM; b) hold an annual meeting; c) rescind documents that purported to amend TBM's original organizational documents; and 2) a writ of quo warranto, directing David and TBM to show by what authority they have amended the original organizational documents.[4]

In response, David and TBM filed a dilatory exception, urging the objection of unauthorized use of summary proceeding, and a peremptory exception, urging the objection of no cause of action. Additionally, defendants filed a peremptory exception raising the objection of no right of action as to only the "[c]auses of [a]ction" seeking mandamus relief. A hearing was held, which addressed the defendants' objections and petitioners' requested relief.

On March 31, 2021, the district court signed a judgment, denying all of defendants' objections and granting the writ of mandamus and quo warranto in favor of plaintiffs and against defendants.[5] The judgment further decreed: 1) Cameron's

---

[3] The Amended Articles of Organization provided David would continue as the sole member and manager of TBM. These amendments further provided: 1) the Board of Managers shall consist of David, a juridical entity comprised of the family members of David, and a juridical entity comprised of the family members of Cameron, and 2) David "shall have three ... votes and each of the respective families' juridical entitites shall have one vote for a total of five ... votes from the Board of Managers."

[4] The two trusts were named as petitioners in an amending petition.

[5] In reasons for judgment, the district court stated that because members of TBM have the right to vote in proportion to his or her membership interest/units in the company, the determinative issue was whether the estate was a member of the company. The district court found that without Cameron's estate being a member of TBM, it could not properly operate under its original organizational documents, and as such the estate was entitled to be recognized as a member of TBM until the succession proceedings were judicially concluded. The court also found: 1) the DW and RW Trusts are full members of TBM with voting rights; 2) David had no authority to amend the original organizational documents since there was no vote by a majority interest of the

5

Estate is "hereby recognized as a member of [TBM] with full rights as a member, including the right to vote"; and 2) the September 4, 2020 Amended Articles of Organization are "null and void." The judgment also ordered David, as sole manager of TBM, to call and hold an annual meeting of the members of TBM to conduct business in accordance with the law and the original organizational documents of TBM.[6]

On April 20, 2021, TBM filed a motion to substitute counsel. The motion requested the substitution of William E. Bourgeois and Gerard J. Bourgeois of Bourgeois Law, L.L.C. (Bourgeois), as counsel in lieu of existing counsel, Justin B. Schmidt (Schmidt), who was practicing with Breazeale, Sachse & Wilson, L.L.P.

---

membership units in favor of such action; and 3) David, as sole manager, failed to timely call and hold an annual meeting of TBM, and he was required to do so.

[6] On April 22, 2021, Schmidt on behalf of David and TBM timely filed a motion for new trial, urging the court's March 31, 2021 judgment was contrary to law. The district court denied the motion for new trial by a May 12, 2021 judgment. Also, a judgment dated May 12, 2021, provided as follows:

WHEREAS, in the Reasons for Judgment signed on March 31, 2021, this Court found as follows:

The Court finds that based upon the trial testimony and acquiescence of counsel for Defendants, the [DW Trust and the RW Trust] are full members of [TBM]. These two trusts have voting rights as they were properly voted in as Members of [TBM] prior to the death of [Cameron]....

WHEREAS, the parties have agreed that all five of the Trusts admitted as Company Members should be recognized in the Court's Judgment as such.

NOW, THEREFORE:

IT IS ORDERED, ADJUDGED AND DECREED ... that the [DW Trust, the RW Trust, the JW Trust, the PW Trust, and the MWL Trust] ... are hereby recognized as members of [TBM] with full rights as members, including but not limited to the right to vote.

Pretermitting any discussion regarding the validity of this judgment, we note that while counsel for appellant had urged in the proceedings below that the individual trusts were members that did not have voting rights, this argument has not been advanced on appeal.

6

(BS&W) at that time.[7] The motion stated that in light of the district court's March 31, 2021 judgment, TBM had the right to be operated by a majority of its members and to select its own counsel and that it desired to substitute counsel on an expedited basis to limit further damage to TBM. The motion further stated: 1) a majority of TBM members by written consent have amended the Articles of Organization and the Operating Agreement, thereby removing David as manager and naming Darrell as "sole manager"; and 2) at Darrell's direction, Bourgeois informed Schmidt that TBM had terminated him and he had no further authority to act on behalf of TBM.

Schmidt, on behalf of David and TBM, opposed the motion to substitute counsel, urging the defendants had filed a motion for new trial and that the judgment signed on March 31, 2021, did not recognize Linda Sue or Darrell as a Manager for TBM or address how a manager other than David could have been installed for TBM.

Bourgeois responded that a pending motion for new trial does not suspend the district court judgment[8] and that the majority members had properly executed their voting rights by amending the Operating Agreement, removing David, and installing Darrell. The motion to substitute counsel was ultimately granted on May 26, 2021.[9]

---

[7] On December 1, 2021, David R. Kelly, general counsel with BS&W, notified this Court that as of November 14, 2021, Mr. Schmidt was no longer practicing law with BS&W, and that pursuant to David's instructions, Schmidt continues to represent David in this matter rather than BS&W.

[8] Since a party has thirty days after the denial of a motion for new trial to obtain a suspensive appeal, a properly filed motion for new trial does effectively suspend the district court judgment where a suspensive appeal is taken. La. C.C.P. art. 2123(A)(2).

[9] Defendants filed a notice of intent to apply for supervisory writs, seeking review of the district court's ruling granting the motion to substitute counsel and requesting a stay. On June 4, 2021, the district court denied defendants' request for a stay. Defendants filed a writ application with this Court. Because the writ application was missing documentation, this court did not consider it, but afforded David until November 8, 2021 to refile a writ application with the missing documentation. **See Webster v Webster**, 2021-0889 (La. App. 1 Cir. 10/25/21), 2021 WL 4948344 (unpublished writ action). David did not refile his application to seek review of the May 28, 2021 judgment.

7

On May 25, 2021, Schmidt, on behalf of David and TBM, filed a motion to suspensively appeal the March 31, 2021 judgment.[10] TBM, via Bourgeois, filed a motion with this Court, seeking to withdraw and dismiss the suspensive appeal purportedly filed on behalf of TBM dismissed as to it, urging Schmidt had no authority to appeal on behalf of TBM.[11] Defendants did not oppose this motion. Although the initial motion for appeal filed by Schmidt was filed on behalf of both David and TBM and the district court's order granting the suspensive appeal referred to both parties, the only appellate brief filed by Schmidt was filed solely on behalf of David.

On appeal, David asserts the district court erred by incorrectly applying the law to the facts of this case, warranting reversal. More specifically, David asserts the court erred by: 1) denying his declinatory exception raising the objection of unauthorized summary proceedings; 2) finding the Estate was a member of TBM; 3) finding TBM was "member-managed," with each member having a vote based upon ownership interest; 4) assigning any significance to David's attempt to amend the Articles of Organization, and 5) considering extraneous testimony to interpret the unambiguous terms of TBM's original organizational documents. David prays for the district court's judgment to be reversed and for him to be recognized as the sole manager of TBM, with all authority granted to that position in the original organizational documents.

Before filing their appellee brief, petitioners filed a motion to dismiss this appeal as moot, urging events that have occurred in the Succession Proceedings after

---

[10] On October 15, 2021, petitioners timely filed with this Court a motion to dismiss the suspensive appeal, or, alternatively, to dismiss in part and convert part of the suspensive appeal to a devolutive appeal. On January 12, 2022, disposition of the motion was referred to this panel. See **Webster v. Webster**, 2021-1224 (La. 1st Cir. 1/12/2022)(unpublished action).

[11] Disposition of the motion was referred to this panel on January 12, 2022. See **Webster v. Webster**, 2021-1224 (La. 1st Cir. 1/12/2022)(unpublished action).

the district court signed the March 31, 2021 judgment have substantially affected TBM's operations. Petitioners assert any relief granted to defendants in this appeal would have no practical effect on TBM's business affairs. Petitioners have previously maintained that fundamental membership and management changes have occurred. Petitioners now maintain the DW and RW Trusts have a majority share of TBM's units and they have admitted the Estate as a member and they have confirmed and ratified the Estate's past actions. As such, petitioners argue that because any relief granted to David on appeal would have no practical effect on TBM's business affairs, the case is moot and should be dismissed.

## ANALYSIS

In furtherance of its motion to dismiss this appeal as moot, petitioners assert that on June 7, 2021, the DW and RW Trusts have been each awarded possession of one-half of the 173.65 units previously held by the Estate (all of Cameron's membership units, except 2.00 units) via a partial judgment of possession in the Succession Proceeding.[12] Petitioners assert that in the proceedings below, the parties stipulated these trusts were members of TBM.[13] According to the motion, after resolution of the succession proceedings, the DW and RW Trusts now hold an unequivocal majority interest in TBM. Petitioners state these majority members have "separately confirmed and ratified all of the decisions that David challenges in this

---

[12] Petitioner's motion states the following:

> [Linda Sue] donated her community one-half of the 175.650 membership units, and [Cameron's] descendants [Darrell and Robert] donated their rights as legatees to their respective portions of [Cameron's] community half of the [175.650] membership units, to each of the [DW and RW Trusts] in equal portion.

Despite referencing the full amount of membership units held by the Estate, the motion twice states that 2.00 of the membership units were not transferred to the RW and DW Trusts.

[13]Counsel for David and TBM stipulated that David was not the sole member of TBM and the First Amended Articles of Organization was executed by mistake.

9

appeal, including the admission of the Estate as a full member." Petitioners maintain that independent of the district court's March 31, 2021 order, due to these subsequent events, each one of the district court's orders are "redundant at best," and "this appeal is a mere academic exercise with no real-world effects."[14]

Petitioners urge David has acknowledged that at the time of Cameron's death, TBM had seven members holding ownership interests in TBM, and three of those members, Cameron (175.65 units), RW Trust (11.175 units), and DW Trust (11.175 units) held a combined majority interest of 54.65% ownership. Because Cameron's 175.65 units were held by his Estate at the time of the lower court proceedings, David's focus both in district court and on appeal was whether the Estate had membership or voting rights in TBM and whether any action taken based on the presumed membership and voting rights of the Estate could legally stand. Petitioners claim that even if this Court were to find error in the district court findings, because the DW and RW Trusts now control a majority of the membership units and have acted to ratify the admission of the Estate as a member and to confirm TBM's current business arrangements, a reversal would have "no practical effect," and as a result, "there is no justiciable controversy...." Thus, petitioners contend this appeal is moot and should be dismissed.

---

[14] Petitioners attached to its motion a June 14, 2021 "Written Consent of Majority Members of [TBM] Regarding Ratification of Membership Admission of Estate of [Cameron Webster]," which references in part that: 1) pursuant to "agreement of the parties," the May 12, 2021 judgment recognized the DW and the RW Trust as members of the Company with full rights as members, including but not limited to the right to vote; 2) the legatees of Cameron's Estate donated their interests in the estate to the DW and RW Trusts and that a Partial Judgment of Possession was entered on June 7, 2021, putting these trusts in possession as owners of 86.825 membership units in the Company, for a combined total of 173.65 membership units, 3) that Cameron's Estate has retained possession of two membership units in TBM, and 4) the RW and DW Trusts ratified a "Written Consent," previously executed on November 13, 2020, by them and Linda Sue, wherein the Estate was duly admitted as a member of TBM.

10

While neither David nor TBM have conceded mootness, they have not filed any opposition to the motion to dismiss, and thus have not challenged any of the alleged facts supporting the motion.

It is well settled that courts will not decide abstract, hypothetical, or moot controversies or render advisory opinions with respect to such controversies. **Cat's Meow, Inc. v. City of New Orleans Through Dept. of Finance**, 98-601, p. 8 (La. 10/20/98), 720 So.2d 1186, 1193. According to Louisiana jurisprudence, an issue is "moot" when a judgment or decree on that issue has been deprived of practical significance or made abstract or purely academic. A case is "moot" when a rendered judgment or decree can serve no useful purpose and give no practical relief or effect. If the case is moot, then there is no subject matter on which the judgment of the court can operate. Jurisdiction, once established, may abate if the case becomes moot. **First Nat. Bank of Picayune v. Pearl River Fabricators, Inc.**, 06-2195, p. 7 (La. 11/16/07), 971 So.2d 302, 307-08. The controversy must normally exist at every stage of the proceeding, including the appellate stages. **Felder v. Political Firm, L.L.C.**, 2014-1266, p. 6 (La. App. 1 Cir. 4/24/15), 170 So.3d 1022, 1027.

Louisiana Code of Civil Procedure article 2164 states, in pertinent part, "The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal." The record on appeal is that which is sent by the district court to the appellate court and includes the pleadings, court minutes, transcript, jury instructions, judgments, and other rulings, unless otherwise designated. **City of Hammond v. Parish of Tangipahoa**, 2007-0574, pp. 4-5 (La. App. 1 Cir. 3/26/08), 985 So. 2d 171, 176. An appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence. **Id.** As an appellate court, we have no jurisdiction to receive new evidence. **Id.** at 177.

11

The alleged facts regarding fundamental membership and management changes that have transpired after the hearing on the merits are not part of the record before us. As such, the record does not allow a final disposition of the case or provide sufficient information for determining whether this matter is indeed moot.

Louisiana Revised Statutes 12:1318, addressing the voting rights of members provides, in part:

> A. Unless otherwise provided in the articles of organization or a written operating agreement, each member of a limited liability company shall be entitled to cast a single vote on all matters properly brought before the members, and all decisions of the members shall be made by majority vote of the members.
>
> B. Unless otherwise provided in the articles of organization or a written operating agreement, a majority vote of the members shall be required to approve the following matters, whether or not management is vested in one or more managers pursuant to R.S. 12:1312:
>
> ...
>
> (6) An amendment to the articles of organization or an operating agreement.

Louisiana Revised Statutes 12:1333(A) provides, "Except as otherwise provided in the articles of organization or a written operating agreement, if a member who is an individual dies ... the member's membership ceases and the member's executor ... shall be treated as an assignee of such member's interest in the limited liability company." Louisiana Revised Statutes 13:1332(A) states, "Except as otherwise provided in the articles of organization or a written operating agreement: (1) An assignee of an interest in a limited liability company shall not become a member or participate in the management of the limited liability company unless the other members unanimously consent in writing."

12

Relevantly, Article III of the original Articles of Organization, addressing "Management," provides, in pertinent part:

> Except for situations in which the approval of the members is required by non-waivable provisions of the LLC Law, **all of the business(es), assets, affairs, transactions, property and interests of the Company, of any nature and description, shall be exclusively and solely managed, conducted, performed and controlled by and under the sole direction of the Manager(s) of the Company. The Company shall be initially managed by [Cameron] and [David], who shall be the Company's Managers; in the event that one of the said initial Managers does not, will not, or cannot serve or continue to serve for any reason as a Manager, then the remaining of the said initial Managers shall continue as the sole Manager of the Company** .... **The Managers of the Company shall not have authority to undertake on behalf of the Company any of the matters listed and described in [La. R.S. 12:1318(B)(1) through (3)** [the dissolution and winding up of the LLC; the sale, or other transfer of all or substantially all of the assets of the LLC; and the merger or consolidation of the LLC] and **(6) [an amendment to the articles of organization or an operating agreement]; all action on those matters is reserved to the members of the Company by a vote of a majority in-interest in the Company** ....

(Emphasis added.)

Article IV, addressing **Member Voting**, provides as follows:

> Each member of the Company shall have votes which shall be proportionate to his or her ownership interest **(being membership interest/units)**, in the Company. **When acts or action by the Company must be authorized or approved by the members, affirmative votes thereon by those members holding together a majority in membership interest/units in the Company shall be required for such approval or authorization thereof, including,** but not limited to, the matters listed and described in [La. R.S. **12:1318(B)(1)** through (3) and (6)] and [La. R.S. 12:1332(A)(1)][**an assignee of an interest in an LLC becoming a member or participating in the management of the LLC**].

(Emphasis added.)

Article IX, Section 6 of the original Operating Agreement, addressing the transfer of interests with respect to a "Substituted Member" provides, in pertinent part, as follows:

> Upon the death ... of a Member ..., the Member's successor in interest shall not be substituted as a Member unless and until he or she is

13

approved by the other Members as provided in the Article of Organization and a report or an amendment of the Articles of Organization has been duly executed and filed as required by law.

Article II, Section 5(A) of the original Operating Agreement provides as follows with respect to voting:

> Action to be taken by the vote of the Members shall be authorized by the vote of the Members as required by the Articles of Organization of the Company, this agreement, and otherwise as may be required by law. **Each member of the Company shall have votes which shall be proportionate to his or her ownership interest, being the membership interest/units, in the Company and the vote of those members holding together a majority of such membership interests in the Company shall be required on all matters where a vote of the members is necessary for action by the Company** or such vote is required by the Manager(s), except where a greater than majority in-interest vote is required in the Articles of Organization of the Company or by law.

(Emphasis added).

Based on the respective unit ownership of each member at the time of the March 31, 2021 ruling, whether the Estate was a member of TBM was a significant determination regarding the issues presented. If the vast majority of the Estate's ownership units have been in fact transferred to the DW and RW Trusts, undisputed members of TBM, whether the Estate is a member of TBM purportedly is of little consequence to TBM's ongoing operations. Based on the record, however, this Court has no evidence to confirm whether this transfer in fact occurred. As a result, we do not have sufficient information to determine whether the trusts have sufficient votes and authority in accordance with the terms of the original organizational documents (and pursuant to La. R.S. 12:1318) to amend the organizational documents to provide different membership and management provisions fundamental to TBM's operations. TBM's motion to substitute counsel stated that a majority of TBM members have amended the Articles of Organization and the operating agreement, thereby removing David as manager and naming Darrell as "sole manager." Thus,

14

we cannot determine based on the record before us whether events that have transpired after the judgment on appeal operate to defeat David's claim that he should be reinstated as sole manager of TBM. Although these facts are not established in the record before us, based on the unopposed facts alleged by petitioners, this case should be treated as potentially moot and remanded for the court to determine the appropriate facts and whether this action should be dismissed. The district court should also determine whether the alleged actions referenced in petitioner's motion to dismiss could have been taken legally with respect to TBM in light of the suspensive appeal that was granted.[15] **See De Felice v. Garon**, 395 So.2d 658, 662 (La. 1980) (on rehearing); **Succession of Elrod**, 371 So.2d 796, 797-98 (La. 1979); **Vacuum Oil Co. v. Cockrell**, 174 La. 60, 62, 139 So. 759 (1932). We find these allegations support an order setting aside the judgment under review and remanding the matter for further proceedings. La. C.C.P. art. 2164. **See Vacuum Oil Co.**, 174 La. at 62, 139 So. at 759.

## CONCLUSION

For these reasons, we vacate the March 31, 2021 judgment and remand this matter for the district court to determine, after a contradictory hearing, whether post-judgment events have rendered this matter moot. The trial court should conduct any further proceedings as necessitated by that determination and render such judgment as the facts and law may justify, which may include the dismissal of the suit, a judgment that conforms with the March 31, 2021 judgment, or a judgment in accordance with any new facts established during the contradictory hearing, to the extent the parties' actions were taken legally in light of the suspensive appeal. Petitioners' motion to withdraw and dismiss the suspensive appeal and its motion to

---

[15] A suspensive appeal suspends the effect or the execution of an appealable order or judgment. La. C.C.P. art. 2123.

15

dismiss the suspensive appeal or, alternatively, to dismiss in part and convert part of the suspensive appeal to a devolutive appeal are denied in light of the fact that the trial court may find this matter is moot. One-half of the appeal costs are assessed to petitioners, and the other one-half is assessed to David H. Webster.

**MARCH 31, 2021 JUDGMENT VACATED AND MATTER REMANDED FOR FURTHER PROCEEDINGS; MOTION TO WITHDRAW AND DISMISS SUSPENSIVE APPEAL DENIED; MOTION TO DISMISS SUSPENSIVE APPEAL OR, ALTERNATIVELY, TO DISMISS IN PART AND CONVERT PART OF SUSPENSIVE APPEAL TO DEVOLUTIVE APPEAL DENIED.**